## Linda COBLE *v.* Rhonda SEXTON

CA 00-260                                      27 S.W.3d 759

Court of Appeals of Arkansas
Division II
Opinion delivered October 4, 2000

*Lorie L. Whitby*, for appellant.

*Bill Bristow*, for appellee.

JOHN B. ROBBINS, Chief Judge.   In this case, funds from a 401(k) savings plan were deposited in the registry of the Greene County Chancery Court after a dispute arose as to who was entitled to the funds.   Appellant Linda Coble appeals from the chancellor's order that awarded the proceeds to the designated contingent beneficiary, appellee Rhonda Sexton, instead of to her. Cross-appellant Laura Mersch appeals the award as well, arguing that she should have been awarded the proceeds.   We reverse and remand.

The facts giving rise to this cause of action are as follows. The 401(k) savings plan was owned by Mr. William E. Sexton, who died on November 18, 1998.   Mr. Sexton had two biological daughters, appellant Linda Coble ("Linda") and cross-appellant Laura Mersch ("Laura").   Mr. Sexton had been married to their mother, but they divorced in 1984.   Their mother remarried, and Laura was adopted by her stepfather in 1986, when she was fifteen years old.   It was unknown if Mr. Sexton was ever aware that this adoption took place.   Appellee Rhonda Sexton ("Rhonda") is the niece of the late Mr. Sexton, being the daughter of his brother.

Mr. Sexton executed a Designation of Beneficiary Form with regard to the savings plan on May 31, 1995, wherein he attempted to name the person to receive the proceeds of the savings plan upon his death.   The primary beneficiary was designated to be "Laura Cobble, Daughter, of 2135 State, Granite City, Illinois."   The form provided that if the primary beneficiary died prior to the complete distribution of the account, then the contingent beneficiary would receive the proceeds.   The contingent beneficiary was designated to be "Rhonda Sexton, Niece, of Jonesboro, Arkansas."

After Mr. Sexton's death, Schneider National Carriers, Inc., which managed the savings plan, could not determine who should receive the proceeds as primary beneficiary because it discovered that there is no such person as "Laura Cobble."   The names of Mr. Sexton's biological daughters are Linda Coble and Laura Mersch. Furthermore, though both biological daughters did live for some period of time at 2134 State Street, Granite City, Illinois, this address is one digit different from the beneficiary form. Laura lived

at that address on the date that the beneficiary designation form was completed; Linda did not.

Confronting its inability to determine the proper beneficiary, Schneider National filed an interpleader action, asking the chancery court to permit it to deposit the funds into the court's registry. The funds were accepted, and Schneider National was dismissed from the matter.

Linda and Laura filed responses to the interpleader action in which each requested that she be found to be the primary beneficiary. Rhonda responded to the interpleader by stating that she thought Mr. Sexton intended for Laura to be the primary beneficiary, but if that designation failed, then she should be awarded the proceeds as the contingent beneficiary. Mr. Sexton's widow responded that she thought that Linda should receive the proceeds as his only legal daughter; she disclaimed any interest in the savings plan.

A consolidated hearing was held on the interpleader action and on Linda's motion for determination of heirship, which was pending in a related probate case. Mr. Sexton's will was admitted without objection for consideration in the probate proceeding. During the hearing, counsel for Laura and counsel for Rhonda moved that the chancellor consider extrinsic evidence in construing the meaning of the words in the primary beneficiary designation. The chancellor denied the motion, and a proffer of that testimony and evidence was made. Later, the motion was renewed, but was again denied.

After taking the matter under advisement, the chancellor determined that Mr. Sexton completely failed in his attempt to name a primary beneficiary and that the contingent beneficiary was entitled to the proceeds in the amount of $74,580.01. In his order, the chancellor found it significant that Mr. Sexton, in his January 28, 1995, holographic will, described Laura Mersch as his "daughter." This appeal followed.

Linda's contentions on appeal are that the chancellor erred (1) in considering the holographic will as extrinsic evidence of the primary beneficiary, (2) in finding that there was a failure to name a primary beneficiary, and (3) in awarding the proceeds of the savings plan to the contingent beneficiary. Linda asserts that the chancel-

lor's judgment should be reversed and the funds awarded to her as primary beneficiary. Laura argues in her cross–appeal that the judgment should be reversed because the chancellor erred in not finding the contract to be ambiguous and not considering the proffered extrinsic evidence. We agree with Laura that the trial court erred when it did not find the contract ambiguous and in not considering the proffered extrinsic evidence. We reverse and remand on this point.

■ ■ When contracting parties express their intention in a written instrument in clear and unambiguous language, it is our duty to construe the written agreement according to the plain meaning of the language employed. *Miller v. Dyer*, 243 Ark. 981, 423 S.W.2d 275 (1968). However, where the meaning of a written contract is ambiguous, parol evidence is admissible to explain the writing. *Brown and Hackney v. Daubs*, 139 Ark. 53, 213 S.W. 4 (1919). Ambiguities are both patent and latent. When, on its face, the reader can tell that something must be added to the written contract to determine the parties' intent, the ambiguity is patent; a latent ambiguity arises from undisclosed facts or uncertainties of the written instrument. *Johnson v. Mo. Pac. R. R. Co.*, 139 Ark. 507, 214 S.W. 17 (1919); *Taylor v. Union Sawmill Co.*, 105 Ark. 518, 152 S.W. 150 (1912). However, the initial determination of the existence of an ambiguity rests with the trial court, and if ambiguity exists, then parol evidence is admissible and the meaning·of the term becomes a question for the factfinder. *Fort Smith Appliance and Serv. Co. v. Smith*, 218 Ark. 411, 236 S.W.2d 583 (1951); *Brown and Hackney v. Daubs, supra*; *Easton v. Washington County Ins. Co.*, 391 Pa. 28, 137 A.2d 332 (1957). While we do not set aside a trial court's finding of fact unless it is clearly erroneous, Ark. R. Civ. P. 52, the determination of whether a contract is ambiguous is a matter of law. *Western World Ins. Co. v. Branch*, 332 Ark. 427, 965 S.W.2d 760 (1998); *C&A Construction Co. v. Benning Construction Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974); *Arkansas Burial Ass'n v. Dixon Funeral Home*, 25 Ark. App. 18, 751 S.W.2d 356 (1998).

■ Here, there existed a latent ambiguity because, on the face of the document, a reader would not anticipate that additional information was needed to determine who the primary beneficiary was. However, a latent ambiguity became apparent when evidence was introduced that there was no such person as "Laura Cobble." The proffered evidence should have been considered to determine

if it shed light on the meaning of the words used in the primary beneficiary designation. Apparently, the chancellor was inclined to consider Mr. Sexton's holographic will for that purpose. We reverse and remand this case for the chancellor to consider extrinsic evidence in his attempt to resolve this ambiguity.

Because we reverse and remand on this issue, we need not address appellant's and cross-appellant's other points on appeal.

Reversed and remanded.

CRABTREE and MEADS, JJ., agree.