CANNON REMODELING & PAINTING, INC. *v.*
THE MARKETING COMPANY, Inc.

CA 02-98                                    90 S.W.3d 5

Court of Appeals of Arkansas
Division IV
Opinion delivered November 13, 2002

[Petition for rehearing denied December 18, 2002.]

*R. Ted Vandagriff*, for appellant.

*Mildred Havard Hansen*, for appellee.

LARRY D. VAUGHT, Judge. Appellant, Cannon Remodeling & Painting, Inc., appeals from an order of the trial court denying it a lien on property of appellee, The Marketing Company, Inc., and granting Cannon damages in the amount of $333. Cannon contends that the trial court erred in denying the lien, in allowing appellee a setoff, in denying attorney's fees, and by requiring Cannon to join other lienholders. We affirm.

On September 27, 1999, Cannon Remodeling & Painting (Cannon), through its president, Robert Cannon, presented an estimate to Susan Maddox, president of The Marketing Company (TMC), for work to be performed at TMC's property located at 515 West 15th Street in Little Rock. The work was to repair tornado damage and to remodel the house for use as a bed and breakfast. Ms. Maddox selected Cannon because it could begin work immediately and had the expertise and crew to complete the job by the requested completion date of Christmas 1999. After the work began, Cannon submitted requests for cash advances and invoices, which TMC paid. The parties terminated their agreement in January 2000 because TMC questioned the quality and timeliness of Cannon's work.

On January 11, 2000, Cannon delivered invoices for work performed. The parties met on January 14, 2000, to review the invoices and discuss discrepancies in the billing. Mr. Cannon and Ms. Maddox reached an agreement as to the invoices through January 11, and TMC paid the outstanding balance in full. The last day that Cannon provided any labor or materials to TMC was January 14, 2000; Mr. Cannon and his crew cleaned and videotaped the job site on January 15.

Mr. Cannon subsequently submitted a $7,955.12 invoice dated January 15, 2000, for additional work performed, other charges that Cannon claimed were due, and charges for casement windows that had not yet been delivered or installed. An invoice

dated January 18, 2000, in the amount of $1,991.07 was also presented to TMC. TMC did not pay the two invoices, and Cannon filed a materialmen's/laborer's lien on April 21, 2000, in the amount of $10,136.40. On May 8, 2000, Cannon filed a complaint seeking a judgment for $10,136.40 and requesting to foreclose on the property. TMC filed an answer and counterclaim. In its answer, TMC alleged that it was entitled to a setoff for amounts billed by Cannon but paid by TMC directly to subcontractors and suppliers. TMC alleged in its counterclaim that it was entitled to damages, alleging that Cannon breached its contract and that Cannon negligently performed the work resulting in damage to the property.

After the trial, the court ruled that Cannon was not entitled to a lien because it failed to comply with the notice provisions set out in Ark. Code Ann. § 18-44-115. It further stated that because Cannon was not entitled to a lien, it was not necessary to address whether all of the necessary parties were joined pursuant to Ark. Code Ann. § 18-44-123. Finally, the court awarded Cannon damages in the amount of $333. TMC's counterclaim was denied and dismissed. From that decision comes this appeal.

### Standard of Review

Chancery cases are reviewed de novo on appeal. *Forrest Const., Inc. v. Milam*, 345 Ark. 1, 43 S.W.3d 140 (2001). We do not reverse a trial court's findings of fact unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

### 1. Damages

Cannon first argues that the trial court erred in holding that Cannon had not met its burden of proof on damages where TMC pled numerous affirmative defenses but did not plead the affirmative defense of a payment entitling TMC to a set-off of $9,803.30. As TMC points out, Cannon failed to raise this argument below. In *Young v. Moore*, 251 Ark. 296, 472 S.W.2d 100

(1971), the appellant argued that the trial court erred in admitting evidence regarding payment as a defense to a debt when the appellees did not plead the defense of payment. The supreme court held that because appellant failed to make an objection regarding the appellee's failure to plead the affirmative defense of payment, it could not consider the argument raised for the first time on appeal. Because Cannon failed to raise this argument below, we cannot consider it on appeal.

▪ Insofar as Cannon is arguing that TMC failed to meet its burden of proving the defense of payment, we cannot reach the merits of this argument because Cannon failed to bring up an adequate record on appeal. Cannon designated limited portions of the record. Specifically, Cannon failed to designate trial exhibits and only had the cross-examination of Ms. Maddox's testimony transcribed. We are unable to conduct a de novo review of this argument based on the limited record designated by Cannon. Therefore, we must affirm on this point. *See Gibbs v. Hensley*, 345 Ark. 179, 44 S.W.3d 334 (2001)(affirming chancery court decision where appellant failed to bring up a sufficient record).

## 2. Lien

For its second point on appeal, Cannon contends that the trial court erred in holding that it was not entitled to a lien because it failed to follow the notice requirements of Ark. Code Ann. § 18-44-115 (Supp. 2001). Cannon argues that the trial court erred because the notice requirements of Ark. Code Ann. § 18-44-115(c) only apply to residential real estate with four or fewer units, and the property at issue was commercial property or residential property containing more than four units. *See* Ark. Code Ann. § 18-44-115(e)(1)(C).

Even if the property was commercial property as opposed to residential property, as Cannon contends, Cannon did not satisfy the notice requirements that apply to commercial property as set out in Ark. Code Ann. § 18-44-115(e)(2), which provides:

> (e)(2)(A) No material supplier or laborer shall be entitled to a lien unless the material supplier or laborer notifies the owner of the commercial real estate being improved, in writing, that such

material supplier or laborer is currently entitled to payment, but has not been paid.

(B) This notice shall be sent to the owner and to the contractor by registered mail, return receipt requested, before seventy-five (75) days have elapsed from the time that the labor was supplied or the material furnished.

(C) Such notice shall contain the following information:

(i) A general description of the labor, service, or material furnished, and the amount due and unpaid;

(ii) The name and address of the person furnishing the labor, service, or materials;

(iii) The name of the person who contracted for purchase of the labor, service, or materials;

(iv) A description of the job site sufficient for identification; and

(v) The following statement set out in boldface type:

"NOTICE TO PROPERTY OWNER

IF BILLS FOR LABOR, SERVICES, OR MATERIALS USED TO CONSTRUCT AN IMPROVEMENT TO REAL ESTATE ARE NOT PAID IN FULL, A CONSTRUCTION LIEN MAY BE PLACED AGAINST THE PROPERTY. THIS COULD RESULT IN THE LOSS, THROUGH FORECLOSURE PROCEEDINGS, OF ALL OR PART OF YOUR REAL ESTATE BEING IMPROVED. THIS MAY OCCUR EVEN THOUGH YOU HAVE PAID YOUR CONTRACTOR IN FULL. YOU MAY WISH TO PROTECT YOURSELF AGAINST THIS CONSEQUENCE BY PAYING THE ABOVE NAMED PROVIDER OF LABOR, SERVICES, OR MATERIALS DIRECTLY, OR MAKING YOUR CHECK PAYABLE TO THE ABOVE NAMED PROVIDER AND CONTRACTOR JOINTLY."

Cannon disputes the trial court's finding that it was the general contractor and claims its lien solely as a supplier of materials and labor.[1] Subsection (e)(2)(A) provides that no material supplier or laborer shall be entitled to a lien unless the material supplier or laborer notifies the owner of the commercial real estate being improved, in writing, that the material supplier or laborer is enti-

---

[1] We do not reach the issue raised in the concurrence, of whether as a general contractor Cannon arguably may have been entitled to an exemption.

tled to payment and has not been paid. Cannon sent a certified letter to TMC dated April 21, 2000, which was returned to sender. The purpose of the letter was to transmit the lien (filed April 21, 2000) and demand for payment. It provided that Cannon would foreclose on the lien if the full amount of the lien was not paid within ten days. Cannon claims this letter fulfills the notice provision.

The April 21 notice was not timely. Arkansas Code Annotated section 18-44-115(e)(2)(B) provides that the notice shall be sent to the owner before seventy-five days have elapsed from the time that the labor was supplied or material furnished. Here, Cannon last provided labor or materials on January 14 or 15, 2000. Thus, more than seventy-five days had elapsed before the April 21 notice was given. In addition, the purported notice failed to satisfy the requirements of Ark. Code Ann. § 18-44-115(e)(2)(C), such as including the "NOTICE TO PROPERTY OWNER" set out in Ark. Code Ann. § 18-44-115(e)(2)(C)(v).

■ ■ The law requires that the notice provisions in the statute are to be strictly construed, thus requiring strict compliance. *See Books-A-Million v. Arkansas Painting and Specialties Co.*, 340 Ark. 467, 10 S.W.3d 857 (2000). The requirements cannot be satisfied by substantial compliance. *Id.* Because Cannon failed to strictly comply with the notice provisions of Ark. Code Ann. § 18-44-115(e), we hold that it was not entitled to a lien.

### 3. Attorney's Fees

■ Third, Cannon argues that because the trial court erred in finding that it was not entitled to a lien, it also erred in not awarding attorney's fees and costs under Ark. Code Ann. § 18-44-128. We do not reach this issue, because the lien was not validly created. *See Books-A-Million, supra.*

### 4. Joinder of Parties

■ For its final argument, Cannon maintains that the trial court erred in requiring it to join Pulaski Bank and other lienholders where TMC had no purchase-money construction liens outstanding and was not in default on the mortgage. We do

not reach this issue because the trial court never ordered Cannon to join other parties, and thus, there is no order to appeal.

Affirmed.

BAKER, J., agrees.

ROBBINS, J., concurs.

JOHN E. JENNINGS, Judge, concurring. I concur with the majority opinion that affirms the trial court's disposition of this case. However, I do so only because we are limited to the argument made by the appellant.

The trial court held that appellant was the general contractor and was not entitled to a lien on appellee's property because it failed to provide notice to appellee as required under § 18-44-115(c) (Supp. 2001), as well as the notice required by § 18-44-115(e)(2)(A)-(C). Appellant argues on appeal that, because appellant was a material supplier, pursuant to § 18-44-115(e)(1) it was exempt from the § 18-44-115(c) notice requirement inasmuch as the subject property either involved commercial property or was a residential improvement project involving more than four units. As to the notice requirement of § 18-44-115(e)(2)(A)-(C), appellant contends that appellee was not prejudiced by the untimely notice because appellee never claimed her certified mail containing the notice.

The majority holds that even if the subject property was commercial and appellant were exempt from giving appellee the § 18-44-115(c) notice, appellant failed to satisfy § 18-44-115(e)(2) by giving appellee timely notice as provided in § 18-44-115(e)(2)(C). What I believe is of material significance, but which appellant does not raise, is whether as a *general contractor* appellant would have been exempt from the notice provision of § 18-44-115(e)(2)(C).

The title to Act 1298 of 1995, which added subsection (e) to § 18-44-115, expressly stated that it was amending the "Arkansas Code by Incorporating the Recommendations of the Arkansas Task Force on Materialmen's Lien and Bonding Notice Requirements." The final report of the Task Force dated November 1994

spoke to the need of an additional notice to the property owner *after* materials had been furnished to a project; and stated that "this notice should be required of all possible lien claimants (including laborers and subcontractors) *except the general contractor.*" (Emphasis added.) Consistent with this observation and recommendation, Act 1298 provides that "No material supplier or laborer shall be entitled to a lien unless the material supplier or laborer notifies the owner of the commercial real estate being improved, in writing, that such material supplier or laborer is currently entitled to payment, but has not been paid." *See* § 18-44-115(e)(2)(A). The omission of "contractor" in this sentence is particularly significant in light of the Task Force's report, which Act 1298 implemented. Consequently, as a contractor, appellant was probably not required to give the § 18-44-115(e)(2)(C) notice. However, appellant did not argue this, but rather, contended that it had satisfied the notice requirement. The majority opinion appropriately addresses and rejects that argument.

I write separately to emphasize that our majority opinion should not be interpreted to address any more than what appellant has argued on appeal.