Michael J. HICKMAN and Lynda Hickman *v.*
KRALICEK REALTY and CONSTRUCTION COMPANY

CA 03-370                                                                129 S.W.3d 317

Court of Appeals of Arkansas
Division IV
Opinion delivered November 19, 2003

*Phillip J. Milligan*, for appellants.

*Bill Walters* and *Troy Gaston*, for appellee.

TERRY CRABTREE, Judge. Appellants Michael and Lynda Hickman contracted with appellee Kralicek Realty and Construction Company to construct a residence on their property in Sebastian County, Arkansas. The price was to be $376,359.48, which included a "builder's fee" of $27,878.48, consisting of, among other things, the cost of supervision, overhead, and builder's fee. Appellants were permitted to choose their own subcontractors for certain items and pay for these expenses directly. When the balance owed was not paid, appellee filed suit seeking a materialman's lien for the sum of $97,634.08 and, if not satisfied, for foreclosure of the lien.[1] Appellants answered, admitting the existence of the contract but denying the remainder of the allegations of the complaint. Appellants later filed a counterclaim against appellee and pleaded that appellee breached the contract by not informing appellants that the cost of the residence would exceed $376,359.48 and that appellee breached the implied warranty of habitability in failing to provide a working septic system for which appellants would spend in excess of $30,000 to repair. In their counterclaim, appellants admitted that, by their calculations, they owed appellee approximately $21,000. Appellee denied the allegations contained in the counterclaim.

Following a bench trial, the trial court ruled from the bench, finding that the contract was a cost-plus contract; that there was a valid materialman's lien; that appellee was entitled to recover $94,520.92, representing the balance of appellee's total expenditures and the builder's fee; that appellants were entitled to an offset of $1,500 for minor construction problems such as paint, the walls, and brick coloration; that appellants were entitled to another $1,500 offset for unaccounted-for material; that appellee breached the implied warranty to supply the residence with a working septic system, granting appellants a credit of $19,675.34; and that appel-

---

[1] The complaint also named as a defendant Superior Federal Bank, the holder of the mortgage on the property. Superior Federal was dismissed by appellee's taking a non-suit.

lee was entitled to recover costs of $170 and interest from the date of filing its materialman's lien to the date of trial in the amount of $9,188.18. An amended judgment was entered on December 18, 2002, changing the date from which the interest was calculated to the date of the completion of the construction. This increased the amount of interest awarded to $10,488.07 and the total judgment, after setoffs and credits, in appellee's favor to $82,507.65. The judgment also ordered an immediate sale of the property. This appeal and cross-appeal followed. Appellants deposited $82,778.03 in an account with Superior Federal, and the trial court approved that deposit as a supersedeas bond.

Appellants argue three points on appeal: that the trial court erred in allowing appellee to amend its pleadings to conform to the proof to allege a breach of contract; that the trial court erred in allowing appellee a lien for sums that included appellee's profits; and that the trial court erred in holding that appellee's lien was valid when the lien was based on an ambiguous contract. Appellee argues on cross-appeal that the trial court erred in finding that it breached the implied warranty to provide a working septic system and that the trial court erred in failing to award appellee attorney's fees.

Equity cases such as lien foreclosure cases are reviewed *de novo* on appeal. *Cannon Remodeling & Painting, Inc. v. The Marketing Co.*, 79 Ark. App. 432, 90 S.W.3d 5 (2002). We do not reverse a trial court's findings of fact unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

As their first point, appellants argue that the trial court erred in allowing the amendment to conform the pleadings to the proof during trial after an objection was made. At the close of its case, appellee made a motion to conform the pleadings to the proof to include a breach-of-contract claim. Appellants objected to the amendment, but the trial court overruled the objection.[2] On

---

[2] Appellants also moved for a directed verdict on the validity of the materialman's lien claim. The trial court denied the motion. Appellants do not challenge the denial of the motion for directed verdict on appeal.

appeal, appellants argue that this was error because they were denied a fair chance to defend on a breach-of-contract claim.

Arkansas Rule of Civil Procedure 15 governs the amendment of pleadings. Rule 15(b) states in part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended in its discretion. The court may grant a continuance to enable the objecting party to meet such evidence.

■■ Rule 15 vests broad discretion in the trial court to permit amendment to the pleadings, and the exercise of that discretion by the trial court will·be sustained unless it is manifestly abused; and one seeking reversal on that ground must show the manifest abuse of discretion. *Wingfield v. Page*, 278 Ark. 276, 644 S.W.2d 940 (1983). In the present case, the trial court overruled appellants' objection and stated that it would proceed on appellee's breach-of-contract claim and appellants' counterclaim and later determine whether the lien was valid. The trial court also indicated that it viewed the complaint as one requesting judgment for a debt and a lien, which it also asked to be foreclosed. We cannot say that the trial court abused its discretion in allowing the amendment to conform to the proof. First, it appears that the trial court decided the case as a lien claim, not a breach of contract case. Second, appellants did not move for a continuance to meet the new theory. Where neither a continuance was requested nor a demonstration of any prejudice resulting from an amendment was shown, the amendment should be allowed. *Turner v. Stewart*, 330 Ark. 134, 952 S.W.2d 156 (1997). We cannot say that the trial court abused its discretion in permitting the amendment.

For their second point, appellants argue that the trial court erred in allowing appellee a lien for sums that included appellee's profits. Appellee argues that the builder's fee covered the work of a person supervising the subcontractors. Diane Hamilton, appel-

lee's bookkeeper, testified that the actual builder's cost was $222,926.66 and that the builder's fee was $27,878.48, resulting in a total of $250,805.14. Appellants paid appellee a total of $156,284.22, leaving a balance owed of $94,520.92. She testified that the builder's fee covered the supervision of the project and other services of the office. Elmer Kralicek testified that the builder's fee covered workers' compensation insurance, general liability insurance, project supervision, overhead, and profit. He testified that appellant Lynda Hickman wanted a fixed bid on the builder's fee, instead of a fee based on a percentage of the cost, because she realized that she would exceed the contract allowance on some items and did not want to be penalized by paying appellee a larger fee.

█ The Arkansas Supreme Court has held that the mechanics' and materialmens' lien statute, Ark. Code Ann. §§ 18-44-101 through 135 (1987 & Supp. 2003), gives a lien to the person who performs the labor and not to the person who hires labor performed and pays for it. *Middleton v. Watkins Hardware Co.*, 196 Ark. 133, 116 S.W.2d 1043 (1938); *see also Simmons First Bank v. Bob Callahan Servs., Inc.*, 340 Ark. 692, 13 S.W.3d 570 (2000). The supreme court has construed the materialmens' lien statute as not extending to the contractor's profits or bonus. *Withrow v. Wright*, 215 Ark. 654, 222 S.W.2d 809 (1949); *Cook v. Moore*, 152 Ark. 590, 239 S.W. 750 (1922); *Royal Theater Co. v. Collins*, 102 Ark. 539, 144 S.W. 919 (1912). Section 18-44-101(a) was amended in 1995 and now provides in part:

> Every contractor, subcontractor, or material supplier ... who supplies labor, *services*, material, fixtures ... in the construction or repair of an improvement to real estate ... by virtue of a contract with the owner . . . upon complying with the provisions of this subchapter, shall have . . . a lien upon the improvement and on up to one (1) acre of land upon which the improvement is situated. . . .

(Emphasis added.)

As amended in 1995, the statute now specifically includes a contractor's services as an item covered by a materialmen's lien. Only one reported case has considered the scope of the amended statute. In *Simmons First Bank, supra*, the supreme court considered a request for a lien for both the services of a contractor's office personnel and the contractor himself under the amended statute.

There, the supreme court assumed without deciding that the amended statute provided for office support personnel and supervision services within its reach. The supreme court affirmed the trial court's denial of a lien for these items on the basis that the abstract was deficient on the time records of the office personnel and that the trial court was not clearly erroneous in finding that the time the contractor spent on the job was speculative.

█ The trial court found that the contract was a cost-plus contract and allowed appellee credit for its builder's fee, before offsetting the award with setoffs and the credit for appellants' counterclaim. This court has held that the lien provided by section 18-44-101 does not extend to profits on this type of contract, only to the costs of labor and material. *Wells v. Griffin*, 266 Ark. 763, 586 S.W.2d 239 (Ark. App. 1979).[3] Here, the trial court allowed appellee the full amount of its claim, which included the builder's fee without segregating the builder's fee or any profits. We reverse and remand for a determination of the cost of the services, labor, and materials that appellee actually furnished and used in the house and disallow appellee a lien for its profits.[4]

In their third point, appellants argue that the trial court erred in holding that appellee's lien was valid because the lien was based on an ambiguous contract. At trial, the parties stipulated that the contract was ambiguous and that parol evidence could be admitted to explain the ambiguity. Appellants argue that, because the contract is ambiguous and any ambiguity is construed against the drafter (in this case, appellee), the trial court erred in finding that appellee had a valid lien. The basis of appellants' argument is that, according to Lynda Hickman's testimony, appellants have paid $383,208.63 for the house and, therefore, if the contract was a fixed-price contract, then appellee is not entitled to a lien because appellee is not due any further payment.

---

[3] In *Shaw v. Rackensack Apartment Corp.*, 174 Ark. 492, 295 S.W. 966 (1927), the court distinguished between cost-plus contracts and fixed-price contracts and allowed a lien to include profits in a fixed-price contract. *Wells* followed *Shaw* as to one of the lien claimants who had a fixed-price contract.

[4] Appellee, on its breach-of-contract claim, can recover judgment for the full amount of its builder's fee. However, the lien does not extend to appellee's profits. *See Withrow v. Wright*, 215 Ark. 654, 222 S.W.2d 809 (1949).

Where the meaning of a written contract is ambiguous, parol evidence is admissible to explain the writing. *Brown & Hackney v. Daubs*, 139 Ark. 53, 213 S.W. 4 (1919). The parties stipulated that the contract was ambiguous. Here, the trial court, after considering the parol evidence, including testimony that the contract had features of both a cost-plus contract as well as a fixed-price contract, found that the only conclusion possible was that the contract was a cost-plus contract. The rule that, where there is any doubt or ambiguity about the meaning of a contract, an ambiguity in the contract will be resolved against the party who prepared the contract is not to be applied until and unless doubt exists after the court has given consideration to the parol evidence admitted to explain and aid in the interpretation of ambiguities in the contract. *Jefferson Square, Inc. v. Hart Shoes, Inc.*, 239 Ark. 129, 388 S.W.2d 902 (1965). The trial court's findings do not indicate that the trial court entertained any doubt as to the meaning of the contract after considering the parol evidence. Therefore, there is no need to construe the contract against appellee. If the contract was ambiguous, as the parties stipulated, then its meaning would be a question of fact for the trial court to determine. *Coble v. Sexton*, 71 Ark. App. 122, 27 S.W.3d 759 (2000); *Vaccaro v. Smith*, 29 Ark. App. 175, 779 S.W.2d 193 (1989). An agreement, whether written or oral, is not rendered unenforceable because its terms are vague or uncertain. *See, e.g., Swafford v. Sealtest Foods*, 252 Ark. 1182, 483 S.W.2d 202 (1972). We cannot say that the trial court's finding that this was a cost-plus contract was clearly erroneous.

Appellee raises two points on cross-appeal: that the trial court erred in finding that appellee breached an implied warranty to provide a working septic system and that the trial court erred in not granting appellee its attorney's fees.

For its first point, appellee argues that the trial court erred in finding that appellee breached an implied warranty to provide a working septic system. Appellee argues that, in a cost-plus contract, a builder is not liable for unforeseeable costs associated with the contract. We agree and hold that the trial court erred in allowing an offset for the breach of the implied warranty in this case because such a finding is inconsistent with the trial court's finding that this was a cost-plus contract.

■ There was testimony that Lynda Hickman, not appellee, assumed responsibility for the septic system by hiring Al Prieur to conduct a percolation test[5] and hiring a subcontractor to install the system. A second subcontractor was hired to install a more elaborate system after it was determined that the first subcontractor was unable to properly install such a system. Because this is a cost-plus contract, appellants were the ones obligated to pay all unforeseen costs over appellee's bid incurred in installing the septic system. *See Vaccaro v. Smith, supra; Midwest Envtl. Consulting & Remediation Servs., Inc. v. Peoples Bank*, 251 Ill. App. 3d 256, 620 N.E.2d 469 (1993). Further, because appellants knew during construction that the system was defective, they could not recover for breach of implied warranty. *See Bankston v. McKenzie*, 287 Ark. 350, 698 S.W.2d 799 (1985). We reverse and remand with directions to disallow the offset for $19,675.34 for the septic system.

As its second point on cross-appeal, appellee argues that the trial court erred in failing to award it attorney's fees. The trial court denied fees to either party because both parties had prevailed in part on their claims. Appellee cites Ark. Code Ann. § 16-22-308 (1999), the general statute for fees in a breach-of-contract case, in support of its argument. Appellants respond that the trial court did not abuse its discretion and cite *Transportation Properties, Inc. v. Central Glass & Mirror*, 38 Ark. App. 60, 827 S.W.2d 667 (1992), for the proposition that attorney's fees are not recoverable in actions to foreclose a materialman's lien.[6] We find, however, that *Transportation Properties, Inc.*, is not controlling because in this case appellee presented a claim for breach of contract. The trial court here denied fees to either party because both parties had prevailed on their claims. Because we have reversed the claim on which appellants prevailed, on remand, the trial court may reconsider its decision with regard to fees.

---

[5] The testimony was disputed as to whether Elmer Kralicek recommended that appellants use Prieur for the percolation test.

[6] We express no opinion on the applicability of Ark. Code Ann. § 18-44-128 (Supp. 2003), since appellee did not claim below and has not contended in this appeal that it is entitled to fees under this statute. However, on remand, the trial court is free to consider this statute in deciding whether or not a fee is warranted.

Affirmed in part; reversed and remanded in part on direct appeal.

Reversed and remanded on cross-appeal.

VAUGHT and BAKER, JJ., agree.