Lynne PITTMAN *v.* Claude PITTMAN

CA 03-212                                    139 S.W.3d 134

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered December 17, 2003

*Steven R. Jackson*, for appellant.

*Jim Rose*, for appellee.

WENDELL L. GRIFFEN, Judge. This case arises from a judicial construction of a clause in a property, child custody, and support agreement between appellant, Lynne Pittman (now Gordy), and appellee, Claude Pittman. Appellant argues that the trial court erred by interpreting the parties' contract rather than giving effect to the plain language of the contract. We reverse and remand.

The parties were divorced in July 1998. Prior to the divorce, they executed the property, child custody, and support agreement now in question. The trial court incorporated that agreement into the final divorce decree. In December 2001, appellee filed a

petition to modify the provisions of that agreement as they related to spousal support. Appellant eventually filed a motion for summary judgment on that petition.

Before that litigation was put to rest by the trial court, the parties began a new disagreement over one particular clause of the existing property, child custody, and support agreement. Section Twelve of the Agreement states:

> Husband [that is appellee] agrees to provide and be solely responsible for the payment of the costs associated with an undergraduate degree for the minor child of the parties. Said expenses shall include tuition, books, lab fees, room, board, and other legitimate educational expenses.

Appellant filed a petition for contempt and breach of contract on September 10, 2002. The petition alleged that appellee had failed to make payments according to Section Twelve. Appellee denied that he was in contempt or that he breached the agreement.

On November 3, 2002, a trial on the matter took place. Appellee testified that he acknowledged the text of Section Twelve of the agreement. He stated that their mutual daughter, Hayley Pittman, for whose benefit Section Twelve existed, was at Johnson and Wales University at the time of the hearing. He admitted that he had not paid for any of her tuition, books, room, or board, but stated that he had not done so because no one had informed him how much to pay. He sent her seven hundred dollars. He stated that he knew that his daughter's apartment cost about $1,000 per month, but that he had not taken any action to determine any of the other expenses. Specifically, appellee acknowledged in court that under the agreement he was required to pay whatever it cost to put the daughter through school.

Appellee next testified that he, a veterinarian, made about $120,000 the previous year. Appellant is a teacher and makes approximately $20,000 per year. Appellee stated that he recently had become seriously ill and had hired his son, whom he paid about $60,000 per year. Appellee received $32,400 in disability and stated that his overall income had dropped to $92,000. He stated clearly that, if he "had to," he "can afford to send my daughter to the school." He also stated that the previous year he had sent his daughter to the University of Arkansas.

On cross-examination, appellee also stated that the cost of tuition at his daughter's current school was about $18,000 per year. He expressed a willingness to pay whatever it was he paid "last year."

Appellant testified that her daughter was pursuing a degree in culinary arts and restaurant management. She stated that her ex-husband, appellee, had agreed to pay all of their daughter's educational expenses rather than paying continuing child support. Neither of the parties had agreed to modifying the agreement in question. Appellant then introduced a chart of their daughter's living and school expenses, but we do not have that chart in the abstract or addendum. She also stated that their daughter had some scholarships and a grant to cover part of the cost.

The trial court subsequently ruled that Section Twelve did not clearly define the extent of the obligation to pay for the child's education. The trial court reiterated appellee's position that he had paid $12,000 the previous year and that this obligation should continue throughout the daughter's undergraduate studies. The court found that Section Twelve spoke only in "general terms," and that it used the words "legitimate educational expenses." The trial court found further that those words implied "reasonable" educational expenses. Based on Section Eight of the agreement, according to which appellee was obligated to pay appellant, inter alia, the sum of $1,500 per month for support, maintenance, and education of the parties' minor child, the trial court deemed Section Eight instructive concerning the parties' intent at the time they formed the instant agreement and that $1,500 would be a reasonable sum to support the daughter.

The final, written order of the trial court reiterated that, under the agreement, appellee had to pay spousal support to appellant in the amount of $3,500 per month (for a period of 96 months from the execution of the agreement filed July 9, 1998). The order further stated that the daughter had attended the University of Arkansas for one year, for which appellee had paid all expenses, and then relocated to a culinary school at the east coast. The order reiterated that the language of Section Twelve is very general in nature and sets no limits to be expended. The order equated "other legitimate educational expenses" with "reasonable expenses." The trial court emphasized in writing that its order did not constitute a modification of the agreement. The order fixed

appellee's obligation for education at $1,500 per month, for three years. From this order appellant now appeals.

*Analysis*

It is true that independent property settlement agreements such as the one involved here remain subject to judicial interpretation. *Rogers v. Rogers*, 83 Ark. App. 206, 121 S.W.3d 510 (2003); *Sutton v. Sutton*, 28 Ark. App. 165, 771 S.W.2d 791 (1989). In the *Rogers* case, the trial court found that the appellant had agreed to pay for "some other expenses" in addition to the child's tuition and books not covered by scholarships, and ordered him to pay $300 monthly. This court disagreed and held that there was "simply no provision in the agreement for such an allowance, and no evidence to support this award." *Id.*

However, even though the right to interpret existing agreements may exist, we still must follow the rules of contract construction. When contracting parties express their intention in a written instrument in clear and unambiguous language, it is our duty to construe the written agreement according to the plain meaning of the language employed. *Coble v. Sexton*, 71 Ark. App. 122, 27 S.W.3d 759 (2000). Where the meaning of the words is ambiguous, parol evidence is admissible to explain the writing. *Id.* When, on the face of the document, the reader can tell that something must be added to the written contract to determine the parties' intent, the ambiguity is patent. *Id.* Conversely, a latent ambiguity arises from undisclosed facts or uncertainties of the written instrument. *Id.* The initial determination of the existence of an ambiguity in a written contract rests with the trial court, and if an ambiguity exists, then parol evidence is admissible and the meaning of the term becomes a question for the fact finder. *Id.* On appeal, then, we do not set aside a trial court's finding of fact unless it is clearly erroneous, but the determination of whether a contract is ambiguous is a matter of law. *Id.* We do not defer to the trial court's determinations of law.

The trial court ruled that Section Twelve did not clearly define the extent of the obligation to pay for the child's education. It found that Section Twelve spoke in "general terms" only and that the section used the words "legitimate educational expenses." The trial court reasoned that those words meant "reasonable" educational expenses. Consequently, the trial court referred to

Section Eight of the parties' agreement, according to which appellee had obligated himself to pay appellant, *inter alia*, $1,500 per month for support, maintenance, and education of the child. As such, the trial court entered an order that appellee had to pay $1,500 per month for the child's college education.

The pertinent text of Section Eight reads as follows:

> Husband shall pay to Wife the sum of one thousand five hundred dollars ($1,500.00) per month for the support, maintenance, and education of the parties['] minor child. Husband's support obligation has been determined by agreement of the parties and by referring to the Child Support Chart in effect at the time of the execution of the Agreement and shall become effective upon entry of a Decree of Divorce in this matter. . . . Husband's support obligation will continue until any of the following events occur:
>
> a. The death of the child;
>
> b. The attainment of the child's eighteenth birthday or graduation from high school, whichever occurs later;
>
> c. The child becomes emancipated, as defined by the laws of the State of Arkansas.
>
> . . . .

■ First, Section Eight of the parties' agreement has nothing to do with Section Twelve. By its plain language, appellee's obligation to pay $1,500 in child support ceased when Hayley reached the age of 18 or graduated from high school, whichever occurred later. As such, Section Eight concerned itself with a different phase in her life. Section Twelve, on the other hand, concerns itself solely with Hayley's post-secondary-school education. Therefore, the $1,500 mentioned in Section Eight cannot serve as a basis to construe a purported ambiguity of Section Twelve.

■ Second, Section Twelve is not ambiguous. To the contrary, Section Twelve is quite clear in its meaning. Appellee agreed, wisely or otherwise, to pay for "the costs associated with an undergraduate degree," including "tuition, books, lab fees, room, board, and other legitimate educational expenses." There is nothing ambiguous about these terms. The very last phrase, "and other legitimate educational expenses," is admittedly open to interpretation. However, there is no reason to deem that phrase ambiguous where the rest of the language is clear and explicit, and

where the proof is uncontradicted that appellee paid nothing toward Hayley's tuition, books, room, or board, at the culinary school.

■ ■ Even if we assume that this last phrase means "reasonable expenses," if one follows the syntax of Section Twelve, we disagree with the conclusion by the trial court that "reasonable expenses," which in the trial court's opinion should be $1,500, ought to replace the entire Section Twelve. If "legitimate educational expenses" means "reasonable expenses," then it follows that the end of Section Twelve reads: "including tuition, books, lab fees, room, board, *and other* reasonable expenses." In other words, interpreting this last phrase does not relieve appellee of those expenses that precede the term in question. As such, allowing the trial court's construction to stand would be tantamount to rewriting the agreement so appellee can walk away from a deal to which he had freely agreed, even though the deal itself is anything but ambiguous, merely because appellee has what amounts to buyer's remorse.

Reversed and remanded.

STROUD, C.J., BAKER, and ROAF, JJ., agree.

NEAL and CRABTREE, JJ., dissent.

OLLY NEAL, Judge, dissenting. I respectfully dissent from the majority opinion reversing this case because I believe that under the facts of this case the trial court's interpretation of Section 12 of the parties' "Property, Child Custody, and Support Agreement" was not clearly erroneous. Appellee estimated that Hayley's tuition at Johnson and Wales University was $18,000 per year and that her rent was $1,000 per month. The trial court, therefore, ordered appellee to pay $1,500 per month towards Hayley's educational expenses. This amount equals $18,000 per year. Appellant's testimony established that Hayley received scholarships and grants to attend Johnson and Wales. The scholarships and grants surely reduced the total cost of Hayley's education. Therefore, under the facts of this case, I believe that the trial court's decision was not clearly erroneous, and I would affirm.

I am authorized to state that Judge CRABTREE joins in this dissent.