2010 Ark. App. 209

**Lloyd LEE and the Estate of Mark Medlock, Appellants**

v.

**Robert M. BOLAN, Susan K. Bolan and S.O. Bryant Company, LLC, Appellees.**

**No. CA 09–968.**

Court of Appeals of Arkansas.

March 3, 2010.

Maxie Gene Kizer and Frank Wilson Bynum Jr., Pine Bluff, for appellants.

A.J. Kelly, Kelly Law Firm, PLC, Little Rock, for appellees.

ROBERT J. GLADWIN, Judge.

Appellants Lloyd Lee and the Estate of Mark Medlock appeal the order entered by the Pulaski County Circuit Court on July 3, 2007, granting appellees' motion for partial summary judgment and the subsequent order entered on May 7, 2009, granting appellees' motion against all parties as to any and all remaining claims. On appeal, appellants argue that the circuit court erred by granting summary judgment because genuine issues of material fact exist. We affirm.

*Facts*

On or about September 5, 1996, Bolan & Lee, PLC, entered into a purchase agreement with Bob Bolan, Inc., for the purchase of Robert M. Bolan's accounting firm. The thirty-plus page agreement included various payment provisions for equipment, software, client files, and Bolan's services, among other things. Paragraphs six and seven set out payment terms upon the sale of the business to a third party or upon a lump-sum payment to the seller, respectively, by appellants.

Paragraph eight of the purchase agreement set out a requirement that Lee and Medlock take out and maintain a life-insurance policy in their names to secure the purchase of the business, with Bolan listed as the sole beneficiary. The policy was required to have an initial value of $600,000 in the first year of the contract, with the value to decrease in value by $40,000 each year thereafter.

Medlock died on or about June 10, 2003. Sometime in July 2003, the company that issued the life insurance policy set forth in paragraph eight of the purchase agreement paid the policy proceeds, valued at that time at $440,000, to Bolan, personally. As of that date, paragraph seven's lump-sum purchase provision provided for a total payment of $293,007.48 to Bolan as full satisfaction of the contract. Because of the discrepancy in the amounts due under paragraphs seven and eight, Lee and Medlock's estate sued Bolan for the $143,993 difference, alleging that they, personally, were entitled to certain proceeds from the insurance policy at issue. A myriad of pleadings followed, including the addition of various parties. Bolan died on February 16, 2006, and the circuit court subsequently substituted Brett Bolan in his ca-

pacity as executor of the estate of Bolan in place of Bolan.

On or about October 31, 2006, Bolan filed a motion for partial summary judgment, to which appellants responded on or about January 19, 2007. The response included an ₃affidavit from Lee attempting to construe the purchase agreement. Appellees filed a reply on January 31, 2007, stating that the affidavit should not be admitted as it was a violation of the parol-evidence rule. Also on October 31, 2006, Bolan filed a counterclaim for an accounting and damages.

Appellants filed another amended complaint on or about January 19, 2007, that added two new defendants, Susan K. Bolan, Bolan's sister, and S.O. Bryant Company, LLC d/b/a Cool Timber Mobile Home Park and Legion Hut Mobile Home Park, a business Bolan owned with his sister. The second amended complaint alleged that these two new defendants were engaged with Bolan in the fraudulent conveyance of the insurance proceeds at issue in this case because, prior to his death, Bolan transferred the life-insurance proceeds to S.O. Bryant Company, LLC, despite the pending lawsuit over those funds.

Susan Bolan and S.O. Bryant Company, LLC filed a motion to dismiss on or about February 6, 2007, and Bolan filed an answer to the second amended complaint and a motion for partial summary judgment— claiming that the purchase agreement clearly and unambiguously provided for payment to him of the entire $440,000, on the same date. The circuit court held a hearing on the motion for partial summary judgment on or about June 14, 2007, and by letter dated June 15, 2007, the circuit court ruled in favor of appellees. On or about July 3, 2007, the circuit court entered an order granting appellees' motion for partial summary judgment.

Appellants subsequently filed two separate notices of appeal, and docketed two separate ₄appeals with this court: *Lloyd Lee and Estate of Mark Medlock v. Robert Bolan, Susan Bolan, and S.O. Bryant Company, LLC*, No. CA08–683; and *Lloyd Lee and Estate of Mark Medlock v. Robert Bolan, Susan Bolan, and S.O. Bryant Company, LLC*, No. CA08–684. The two appeals were later consolidated at appellants' request. Also, at appellants' request, the consolidated appeal was dismissed for lack of a final order and remanded for further proceedings on December 10, 2008.

On remand, the parties filed additional pleadings, and on or about May 7, 2009, the circuit court entered an order granting the remaining appellees' motion for judgment as a matter of law against all parties as to any and all remaining claims. The order was granted without a hearing, as no hearing was requested. On or about June 4, 2009, appellants filed a notice of appeal naming Robert M. Bolan, Susan K. Bolan, and S.O. Bryant Company, LLC, as the party defendants. Although no notice of appeal was filed by Lee & Medlock, PLC, the successor in interest to Bolan & Lee, PLC, the original contracting purchaser, and Bob Bolan, Inc., was never named in any notice of appeal as a party against whom the appeal had been lodged, although that entity was the original seller, we hold that for purposes of this appeal, the proper parties are before the court. This appeal followed.

*Standard of Review*

■ The standard of review for summary-judgment cases is clear:

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of

law. Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable minds might reach different conclusions from those undisputed facts. On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.

*Jackson v. Sparks Reg'l Med. Ctr.,* 375 Ark. 533, 539, 294 S.W.3d 1, 4–5 (2009). Additionally, this court may not engage in a "sufficiency of the evidence" determination in summary judgment cases. *Wallace v. Broyles,* 331 Ark. 58, 961 S.W.2d 712 (1998).

Even when there is no material dispute as to the facts, summary judgment is not proper "where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might be drawn and reasonable minds might differ." *Thomas v. Sessions,* 307 Ark. 203, 208, 818 S.W.2d 940, 943 (1991). The court must determine whether "reasonable minds" could draw "reasonable" inconsistent hypotheses to render summary judgment inappropriate. *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000). In other words, when the facts are not at issue but possible inferences therefrom are, the court must consider whether the inferences can be reasonably drawn from the undisputed facts and whether reasonable minds might differ on those hypotheses. *Id.*

### Discussion

Appellants' argument, at its core, is that the inconsistency in the various payment terms of the purchase agreement creates a genuine issue of material fact to be litigated. Moreover, they urge that there is evidence that the parties had inconsistent inferences arising from the agreement sufficient to defeat summary judgment.

It is undisputed that various provisions of the purchase agreement provide for alternative payment structures and amounts for the sale of Bolan's business to Lee and Medlock. Appellants assert that problems arose from the triggering of two or more of those provisions that occurred upon Medlock's death. They allege that the provision in paragraph seven, providing that Lee and Medlock could purchase the business by paying a lump sum of $450,000, less any payments that had already been made pursuant to paragraph four of the purchase agreement, was triggered. At the time of Medlock's death, Lee and Medlock had made significant payments pursuant to the terms of paragraph four, to the extent that the remaining lump-sum payment amount at that time would have been $293,007.48. Appellants submit that, under paragraph seven, their payment of that lump sum would have wholly satisfied the terms of the purchase agreement.

The second, and conflicting provision, is contained in paragraph eight of the purchase agreement, requiring Lee and Medlock to purchase and maintain a life-insurance policy made payable to Bolan upon the death of either Lee or Medlock during the term of the purchase agreement. At the time of Medlock's death, the policy amount was $440,000.

Appellants argue that a conflict arose because, upon Medlock's death, the payment of the entire $440,000 more than satisfied the remaining debt under the purchase agreement as set forth in paragraph seven. Despite that fact, Bolan kept the total amount of the life-insurance policy proceeds, claiming he was due a windfall of $146,993, the difference between the total amount paid and the amount still owing under paragraph seven. Appellants argue that this is in direct conflict with the terms of paragraph seven. Appellants contend that these inconsistencies within the purchase agreement, when read as a whole, required the circuit court to deny the motion for partial summary judgment. We disagree.

▬ Appellants acknowledge that the initial determination of the existence of an ambiguity rests with the court. *Fryer v. Boyett*, 64 Ark.App. 7, 978 S.W.2d 304 (1998); *Wedin v. Wedin*, 57 Ark.App. 203, 944 S.W.2d 847 (1997). When a contract is unambiguous, its construction is a question of law for the court. *Rowland v. Faulkenbury*, 47 Ark.App. 12, 883 S.W.2d 848 (1994); *Moore v. Columbia Mut. Cas. Ins. Co.*, 36 Ark.App. 226, 821 S.W.2d 59 (1991). A contract is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction. *See Fryer, supra; Singh v. Riley's, Inc.*, 46 Ark.App. 223, 878 S.W.2d 422 (1994).

▬ In determining whether a contract's terms are ambiguous or susceptible to more than one equally reasonable construction, the court must harmonize different clauses of a contract, and should not give effect to one to the exclusion of another even though they seem conflicting or contradictory, nor adopt an interpretation that neutralizes a provision if the various clauses can be reconciled. *See Byme, Inc.*

*v. Ivy*, 367 Ark. 451, 241 S.W.3d 229 (2006). The object is to ascertain the intention of the parties, not from particular words or phrases, but from the entire context of the agreement. *See Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998). The courts cannot make a contract for the parties, but can only construe and enforce the contract that they have made. *Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005).

▬ The circuit court found, and we agree, that there are no ambiguities in the purchase agreement, as a matter of law. In *Alexander v. McEwen*, 367 Ark. 241, 239 S.W.3d 519 (2006), our supreme court stated that

[t]he first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement.

*Id.* at 244, 239 S.W.3d at 522 (internal citations omitted). The circuit court followed this procedure in the instant case. There was a dispute as to the meaning of a contract term, and the circuit court initially performed the role of gatekeeper, determining first whether the dispute may be resolved by looking solely to the contract or whether the parties relied on disputed extrinsic evidence to support their pro-

posed interpretation. *See Multi–Craft Contractors Inc. v. Perico Ltd.*, 96 Ark. App. 133, 239 S.W.3d 33 (2006). The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence. *Id.*

When contracting, parties express their intention in a written instrument in clear and unambiguous language. It is the court's duty to construe the written agreement according to the plain meaning of the language employed. *Pittman v. Pittman*, 84 Ark.App. 293, 139 S.W.3d 134 (2003). Different clauses in a contract must be read together and construed so that all of its parts harmonize, if that is at all possible, and it is error to give effect to one clause over another on the same subject if the two clauses are reconcilable. *See Multi–Craft, supra.* Because the purchase agreement is not ambiguous as a matter of law, there is no genuine issue of material fact concerning payment of the insurance proceeds, the dollar amounts at issue, or a question of any "windfall" to Bolan.

Although the purchase agreement must be read as a whole, we set out the disputed paragraph eight in its entirety:

Bolan and Lee, PLC will acquire and keep in force for a period of ten (10) years from the date of this agreement a life insurance policy in the original amount of Six Hundred Thousand Dollars ($600,000.00) insuring the lives of Lloyd F. Lee and Mark C. Medlock. The amount of life insurance in force shall decrease Forty Thousand Dollars ($40,-000.00) on each anniversary date of this agreement. Robert M. Bolan, or his estate, shall be the named beneficiary of the policy. In the event that either Lee or Medlock die and the proceeds of the policy are paid to Bolan or his estate, all sums owed by Bolan and Lee, PLC, are canceled.

Pursuant to paragraph eight of the purchase agreement, and upon the death of Medlock on June 10, 2003, the insurance company paid all policy proceeds to Robert Bolan, in accordance with his designation as the sole beneficiary of the insurance policy. On the face of the purchase agreement, and, indeed, on the face of the insurance policy, there simply is no ambiguity: Robert M. Bolan, alone, was entitled to all of the proceeds of the insurance policy.

Although appellants contend that paragraph eight conflicts with paragraph seven, which provides for a lump-sum payment if made by appellants, we hold that the provisions do not "contradict" each other, but rather set out two alternative forms of satisfaction of the obligations under the purchase agreement. In this instance, it was the provision in paragraph eight that was triggered upon Medlock's death.

The circuit court referred in its opinion letter of June 15, 2007, to another applicable paragraph of a separate provision of the purchase agreement, the "Insurance Maintenance Agreement." That provision, in the relevant part of paragraph two thereof, requires Bolan and Lee PLC, to obtain a life insurance policy "for the purpose of insuring that Robert M. Bolan and Bob Bolan, Inc.'s interests as set forth in the master agreement ... are protected in the event of the death of ... Mark C. Medlock. Said policy will be payable upon the death of ... Mark C. Medlock and shall be payable to Robert M. Bolan." That same paragraph further provided for cancellation of the insurance policy if Bolan and Lee, PLC, paid all sums due under the master agreement. Lee and Medlock both signed this insurance maintenance agreement as well as the master purchase agreement.

We agree that there were three different "prices" that might have satisfied the obligations owed to Bob Bolan, Inc., as the seller, pursuant to the provisions of paragraphs six, seven, and eight of the purchase agreement. All of the individuals involved in the transaction were accountants and understood the ramifications of the various provisions, the loss or gain of interest on unpaid balances, reduction of various amounts to present value, and the tax consequences that would result. The purchase agreement, when read as a whole, provides that the total purchase price paid could vary substantially, depending on the timing of the "payment" and the circumstances under which it was made.

Paragraph eight is not another provision for the "lump sum" payment of certain parts of the purchase agreement, and it does not conflict with the "lump sum" payment provision set forth in paragraph seven. We hold that Medlock's death did not trigger paragraph seven at all, and based upon our review of the record, neither Lee, the estate of Medlock, Bolan and Lee, PLC, nor Lee & Medlock, PLC, ever claimed that any of them made a "lump sum" payment of their moneys to Bob Bolan, Inc., or that they separately paid the equipment and receivables note also provided in paragraph seven. It is undisputed that the insurance proceeds were paid to Robert M. Bolan, personally, directly from the insurance company, and not from any of the above-named individuals or entities. Additionally, no funds were paid to Bob Bolan, Inc., as a result of Medlock's death. Appellants could have maintained their own separate life insurance agreements, or they could have provided in the agreements that they would be secondary, contingent, or co-beneficiaries on the insurance policies that they themselves took out on their own lives.

*See Pittman, supra.* However, they failed to do so.

Additionally, we note that appellants' interpretation of paragraph seven would have this court ignore two separate clauses in paragraph seven, (1) the "client list, client file" payments described were limited to the amounts of paragraph four, and (2) the "equipment and receivables note" language, which is a reference to paragraph two and the separate promissory note contained in that provision. We also cannot ignore the limitation of the phrase "[a]s an inducement to pay in a lump sum an amount to satisfy the amounts owed for the client list, client files, client records, etc., which are the subject of paragraph 4 of this agreement ..." also set forth in paragraph seven. The same phrase is not included in paragraph eight; accordingly, paragraph eight is not thereby limited in payment amounts. We construe the purchase agreement in such a way as to give effect to each phrase and clause in paragraph seven of the purchase agreement, as well as paragraph two of the insurance maintenance agreement, just as the circuit court did in its letter ruling as follows:

After having reviewed the two referenced documents executed by the parties, I am of the opinion there is no ambiguity in the contract. The Agreement for Sale specifically sets out various methods, formulas and details of the payments to be made by the buyers and sellers. These provisions are very clear and easily capable of understanding. The provision for the payment of the insurance proceeds is also unambiguous and clear in its meaning.

Finally, we note that paragraph fourteen of the purchase agreement has an integration clause, which precludes the use of parol evidence in the determination of the meaning of the purchase agree-

ment. The circuit court specifically found that

> [t]he intent of the parties is not relevant as the contract plainly speaks for itself. The parties could have easily provided for a net payment or balance owed payment in the event of death, but did not do so. The parties did not contract otherwise. To have the court now make a new contractual provision, which could easily have been inserted at the time of contracting, is improper. I cannot and will not make a new contract for the parties.

We hold that the circuit court's analysis was correct on this issue. The affidavit of Lloyd Lee is not to be considered, as parol evidence is admissible only if an ambiguity exists. *See Singh,* |13*supra.* In the absence of fraud, accident, or mistake, a written contract merges, and thereby extinguishes, all prior and contemporaneous negotiations, understandings, and verbal agreements on the same subject. *Ultracuts Ltd. v. Wal–Mart Stores, Inc.,* 343 Ark. 224, 33 S.W.3d 128 (2000). But even then, parol evidence may not be admitted to alter, vary, or contradict the written contract. *Id.*

We hold that there were no genuine issues of material fact to be litigated, as the purchase agreement was unambiguous as a matter of law, and that appellee was entitled to judgment as a matter of law. Accordingly, we affirm.

Affirmed.

HART and BROWN, JJ., agree.