2010 Ark. App. 75

**Chrissey NUNNENMAN, Appellant**

v.

**ESTATE OF Donald T. GRUBBS et al., Appellees.**

**No. CA 09–451.**

Court of Appeals of Arkansas.

Jan. 27, 2010.

Rehearing Denied March 10, 2010.

Terry P. Diggs, Lawyer, P.A., Hot Springs, by: Terry P. Diggs, for appellant.

Hurst, Morrissey & Hurst, PLLC, Hot Springs, by: Q. Byrum Hurst, Jr., for appellees.

JOHN MAUZY PITTMAN, Judge.

In 2003, decedent Donald Grubbs transferred his individual retirement account (IRA) to Raymond James and Associates, Inc., naming appellant as the beneficiary to receive the residue in the event of his death. Decedent was hospitalized in May 2005 and died on June 9 of that year. On June 3, 2005, decedent summoned an attorney to the hospital, where decedent made and executed a last will and testament that did not mention the IRA account. This will left decedent's entire estate to his mother, Shervena Grubbs, who was also named as executrix. In that capacity, Shervena Grubbs filed this action for an injunction freezing the assets of the IRA account based on her assertion that a note that she found in decedent's Bible months after his death had the effect of changing the beneficiary designation in the IRA account to make her the beneficiary. The trial court agreed and awarded her the account. Appellant asserts that the trial court clearly erred in so doing. We agree, and we reverse.

This case requires construction of three documents: a will, an IRA, and a handwritten note, which was assertedly found by Shervena Grubbs in a Bible some time after decedent's death. The cardinal rule for the interpretation of wills and other testamentary documents is that the

intent of the testator should be ascertained from the instrument itself and effect given to that intent. *Rowland v. Faulkenbury,* 47 Ark. App. 12, 883 S.W.2d 848 (1994). The purpose of construing a will is to arrive at the testator's intention; however, that intention is not that which existed in his mind, but rather that which is expressed by the language of the instrument. *Mills' Heirs v. Wylie,* 250 Ark. 703, 466 S.W.2d 937 (1971).

An IRA constitutes a contract between the person who establishes the IRA for his or her retirement and the financial institution that acts as the custodian of the IRA. *Alexander v. McEwen,* 367 Ark. 241, 239 S.W.3d 519 (2006). Like an insurance policy, an IRA includes designation of beneficiaries to receive the residue in the event of the retiree's death. *See id.* The rules pertaining to the construction of contracts are well settled: In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *Coleman v. Regions Bank,* 364 Ark. 59, 216 S.W.3d 569 (2005). The intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement. *Id.* When a written contract refers to another instrument and makes the terms of that instrument a part of the contract, the two are construed together as the agreement of the parties. *Isbell v. Ed Ball Construction Co.,* 310 Ark. 81, 833 S.W.2d 370 (1992). When contracting parties express their intention in clear and unambiguous language in a written instrument, we must construe the written agreement according to the plain meaning of the language employed. However, where the meaning of a written contract is ambiguous, parol evidence is admissible to explain the writing. *Coble v. Sexton,* 71 Ark. App. 122, 27 S.W.3d 759

(2000). Ambiguities can be patent or latent. When, on its face, the reader can tell that something must be added to the written contract to determine the parties' intent, the ambiguity is patent; a latent ambiguity, on the other hand, arises from undisclosed facts or uncertainties of the written instrument. *Id.*

There are no Arkansas cases dealing specifically with attempts to change IRA beneficiaries by will, but the cases involving insurance policy beneficiaries, cited by appellant, are analogous and instructive. It is generally held that, where a life insurance policy reserves to the insured the right to change the beneficiary but specifies the manner in which the change may be made, the change must be made in the manner and mode prescribed by the policy, and according to most courts any attempt to make such change by will is ineffectual. *See generally* Wanda Ellen Wakefield, Annotation, Effectiveness of Change of Named Beneficiary of Life or Accident Insurance Policy By Will, 25 A.L.R.4th 1164 (1992). However, Arkansas law is contrary to the general rule: Arkansas holds that a change of beneficiary can in fact be accomplished in a will so long as the language of the will is sufficient to identify the insurance policy involved and an intent to change the beneficiary. *Pedron v. Olds,* 193 Ark. 1026, 105 S.W.2d 70 (1937); *see also Allen v. First National Bank,* 261 Ark. 230, 547 S.W.2d 118 (1977).

With these principles in mind, we now turn to the documents involved in the present case. Decedent's IRA application and agreement with Raymond James and Associates, Inc., designated appellant as sole beneficiary of his IRA. Appellant was identified by name, social security number, and date of birth. The effect of this designation upon decedent's estate and the

method of changing beneficiaries were specified as follows:

> I understand that if I designate "my will" or some variation thereof as my Beneficiary, that the Custodian shall interpret this term as my estate and that if I do not designate any Beneficiary, my Beneficiary shall also be deemed to be my estate. I understand that I may revoke this beneficiary designation at any time by completing and submitting a new beneficiary designation, which shall supercede all prior beneficiary designations. Such replacement designation shall be submitted on either a form provided by the Custodian for this purpose and/or in some other manner deemed acceptable to the Custodian.

Decedent's last will, made and executed with the assistance of an attorney shortly before his death, expressly revoked any prior will and stated:

> I hereby give, devise, and bequeath all of my estate and property, of every kind and nature, and wherever situated, to my mother, Shervena T. Grubbs, should she survive me.

 This testamentary provision is unambiguous. As appellant argues, it is also inadequate to effect a change of beneficiary because the language is insufficient to identify the IRA account involved and an intent to change the beneficiary. *See Allen*, 261 Ark. 230, 547 S.W.2d 118. The trial court found, however, that decedent's IRA beneficiary was changed from appellant to appellee by virtue of a note that appellee assertedly found in a Bible in decedent's home after his death. This document, handwritten on a Nations Bank notepad, provided in its entirety as follows:

> May 2005
>
> My Will
>
> I Donnie Grubbs want all of my estate All IRA and any SBC Telco and all other assets and worldly goods to go to my Mother Shervena Grubbs. Being of sound mind.
>
> Donnie Grubbs

The trial judge recognized in his letter opinion that this handwritten note appears dubious. He was right. It was found by appellee, who was the only person who could benefit from its discovery. The plausibility of appellee's account of this fortuitous discovery is not helped by the conflicts in the testimony at trial. Appellee testified that she found the note while at decedent's house in the company of decedent's former coworker, Mr. Tommy Moran, and that she immediately showed the note to Mr. Moran. However, Mr. Moran testified that appellee did not do so, and that he had never seen the document or known of its existence until the day of the trial.

Nevertheless, assuming that the note was authentic, and that it might properly be considered to contradict or vary the unambiguous terms of decedent's IRA beneficiary designation or his last will, the trial court clearly erred in finding that it was an effective change of decedent's IRA beneficiary. As appellant argues, if the note is regarded as a holographic will, it was revoked by the express terms of decedent's last will and by operation of law pursuant to Ark.Code Ann. § 28–25–109(a)(1) (Repl.2004). If the note is not regarded as a will, then the rule permitting change of beneficiaries in a will has no application to it, and appellee had the burden of proving that decedent intended for the note to be a change of beneficiaries and did everything reasonably possible to effectuate a change of beneficiary. *Allen v. First National Bank, supra.* In light of the undisputed evidence that decedent could and did summon an attorney to his bedside mere days before his death and thereby execute a valid and unambiguous

last will, the trial court could not reasonably find that decedent did everything reasonably possible to change beneficiaries given his failure to employ similar efforts to communicate his intent to do so to the custodian of the IRA.

Reversed and remanded.

VAUGHT, C.J., and GLADWIN, GLOVER, and MARSHALL, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting.

In theory, logic is the lifeblood of appellate practice. This fact should apply to any argument made, and hopefully, to the opinions that decide the appeals.[1] I contend that the trial court must be affirmed because both of Ms. Nunnenman's points on appeal are so logically flawed that they simply cannot bring about the relief that the majority has decided to give her. The majority apparently agrees, because, contrary to the practice of this court and our supreme court, rather than addressing the argument actually made by the appellant, they crafted their own, far more coherent argument. Call me old-fashioned, but I think it is important, if only in a dissent, to address the appellant's real argument, if only to do homage to 174 years' worth of cases.

Nunnenman first argues that the trial judge erred by considering the "handwritten note" as evidence of Mr. Grubbs's intention to change his beneficiary. She asserts that the note was in appearance and content a will and was therefore revoked by the document that was admitted to probate as a will. Alternatively, she contends that if the "handwritten document" was not a will, it was an attempt to make an inter vivos gift, and it fails to meet the requirements for such a gift. Finally, she argues that the note should not have been relied on by the trial court because the authenticity of the handwritten document is questionable.

This argument must fail for a number of reasons. First and foremost, the trial court did not find that the note was a will or a gift inter vivos. I decline to speculate whether I would have found such a finding clearly erroneous—I do not have to. The simple truth is that the trial court made neither finding. I believe that the majority has made an obvious mistake of fact.

Second, I contend that the first part of Nunnenman's argument depends on two faulty premises. The first faulty premise is that the pay-on-death designation in the IRA had the conclusive effect of vesting ownership in the account, absent some limited exceptions, outside of probate. This basic assumption does not square with *Hall v. Superior Federal Bank*, 303 Ark. 125, 794 S.W.2d 611 (1990). In *Hall*, the true owner established an investment account with another person who had not contributed as "joint tenants with right of survivorship." Additionally, there was a pay-on-death designation on the signature card providing that "upon the death of either of us, all securities, funds, and property in the account shall be the sole property of the survivor." The supreme court held, however, that these designations were not "conclusive" on the question of how the deceased intended to dispose of the account at her death. The supreme court distinguished investment accounts from simple bank accounts, which, in accordance with statutory law, pass outside

---

1. For a brilliant treatment of this subject, see Andrew Jay McClurg, *Logical Fallacies and the Supreme Court: A Critical Examination of Justice Rehnquist's Decisions in Criminal Procedure Cases*, 59 U. Colo. L.Rev. 741 (1988).

of probate by virtue of the joint tenancy with right of survivorship.

Likewise, I find a lapse of logic when Nunnenman argues that the note must either be a will or a gift inter vivos to have any bearing on this case. Again, the *Hall* case speaks directly to this issue. There, the supreme court held that it was permissible to accept parol evidence regarding the donative intent of a deceased with regard to an investment account, even in the absence of fraud. 303 Ark. at 132, 794 S.W.2d at 615. As the trial court in the instant case correctly found, the note functioned as a statement of Grubbs's intent regarding the disposition of his IRA. I submit that the note was exactly that— parol evidence of Grubbs's donative intent. Accordingly, Nunnenman's assertion that the note qualified as neither a will nor a gift inter vivos is not dispositive of this case.

Most troubling, however, is the majority's treatment of the third part of Nunnenman's first point where she argues that it was error to use the note because the authenticity of the note was "questionable." She asserts that authentication of the handwriting was inadequate for it to be admitted to probate as a holographic will and that the witnesses who testified that the writing was Grubbs's should not be believed.

In the first place, the issue before us is not whether the note should or should not have been admitted to probate as a holographic will—it was not. As noted previously, it was simply a piece of evidence regarding Grubbs's donative intent. The question, therefore, is whether the trial court properly admitted the document into evidence. The admission of evidence is left to the sound discretion of the trial court, and we will not reverse an evidentiary decision absent an abuse of that discretion. *Metzgar v. Rodgers*, 83 Ark. App. 354, 128 S.W.3d 5 (2003). It is axiomatic that a determination of the authenticity of the note, and subsequently its admissibility, was well within the trial judge's discretion. Finally, to the extent that Nunnenman challenges the credibility of the witnesses, it is again axiomatic that appellate courts in Arkansas defer to the trial court's evaluation of the credibility of the witnesses. *O'Fallon v. O'Fallon ex rel. Ngar*, 341 Ark. 138, 14 S.W.3d 506 (2000).

The majority is clearly wrong when it undertakes to find facts on the authenticity of the note. While it is true that the trial court stated in its findings that the note appeared to be "dubious," however, stating that the note appeared to be dubious, and actually finding that the note was dubious are two different matters. Suffice it to say that the trial court obviously found it to be authentic. This was clearly a mistake of fact on the part of the majority. Further, I am unaware of any authority that gives the majority the authority to substitute its own findings for those of the trial court, or simply trump the trial court's evidentiary rulings when the appellant does not first argue that admission of this piece of evidence was an abuse of discretion.

For her second point, Nunnenman argues that the trial judge erred in finding that the handwritten note and the will, considered together, effected a change in the beneficiary of Mr. Grubbs's account. She cites Arkansas law regarding life insurance policies and asserts that the law created by *Pedron v. Olds*, 193 Ark. 1026, 105 S.W.2d 70 (1937), and its progeny should control. Though this argument is well presented, I contend that it should have failed because, like Nunnenman's first argument, it relies on authority that is inapplicable to the case at bar. While it is our responsibility to search for relevant authority when we *affirm* a trial court's

ruling—we must affirm if a trial court is right for any reason—it is quite a significant departure for this court to search for authority to *reverse* a trial court.

Simply stated, we should have declined to apply the law concerning life insurance policies to the case at bar because the thing in question is an IRA, not a life insurance policy. The differences between a life insurance policy and an IRA with a pay-on-death designation are profound. In the first place, with certain exceptions not germane to this discussion, life insurance policies *always* pay money to a designated beneficiary; that is their purpose. Conversely, a pay-on-death designation in an IRA is a contingency that few of us hope will occur. Moreover, life insurance policies are governed by a different statutory scheme than pay-on-death designations.

Ordinarily, when an appellant fails to cite the applicable authority, we summarily decline to consider the point on appeal. Indeed, the writing judge recently used this very procedural bar—albeit in an unpublished case—in *Phillips v. Cavanaugh Free Will Baptist Church, Inc.,* CA05–1010, 2007 WL 1277900 (Ark.App. May 2, 2007).[2] However, rather than apply this procedural bar, the majority not only credited Nunnenman's use of clearly inapplicable authority, but also engaged in extensive research to uncover the main case that it relies on, *Alexander v. McEwen,* 367 Ark. 241, 239 S.W.3d 519 (2006). I am certainly no fan of procedural bars. However, I insist that, if nothing else, the law must be even-handed. I therefore expect that this court will now extend this research service to all appellants.

---

2. I am reminded of the story of Saint Paul on the road to Damascus.