

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-1072

| | |
|---|---|
| DAVID PATTON, WILLIAM PATTON, AND MARY FULMER JONES <br><br> APPELLANTS <br><br> V. <br><br><br> DOROTHY FULMER, INDIVIDUALLY, AND IN HER CAPACITY AS EXECUTRIX OF THE ESTATE OF JOHN M. FULMER, DECEASED <br><br> APPELLEE | Opinion Delivered: MAY 11, 2016 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TWELFTH DIVISION [NO. PR-10-420] <br><br> HONORABLE ALICE S. GRAY, JUDGE <br><br><br> AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## KENNETH S. HIXSON, Judge

Appellants William Fulmer Patton, David Patton, and Mary Fulmer Jones (hereinafter referred to as appellants or "the Pattons") are the nephews and niece of the decedent, Dr. John M. Fulmer, and beneficiaries of a residuary trust created by the decedent's Last Will and Testament. Appellee Dorothy Fulmer (hereinafter referred to as appellee or "Fulmer") is the decedent's widow. Appellants are challenging the circuit court's ruling on the construction of the decedent's will, the bequest to Fulmer, and the award of the distribution of the appreciation of the probate estate's assets. They also raise an evidentiary issue concerning the circuit court's refusal to allow two attorneys to testify as to their opinions concerning the construction of the will and the application of certain pertinent probate or estate tax laws. We reverse the circuit court's rulings as to the construction of the will, the bequest to Fulmer, and the distribution of the

 

appreciation of the probate estate's assets, and we remand for further proceedings consistent with this opinion. We affirm as to the evidentiary issues.

## I. *Introduction*

The decedent and Fulmer had been married for over thirty years. The decedent did not have any children. He died testate on February 25, 2010, leaving a will dated April 18, 1980. The couple owned a residence and other joint accounts, and Fulmer received the proceeds of various life insurance policies and annuities. Altogether, Fulmer received approximately $1.547 million in nonprobate assets shortly after the decedent's death. Fulmer filed the decedent's will for probate and was appointed as the executrix.[1] The probate estate consisted of two investment accounts: an account with Wells Fargo and an account known as the "Dane Fulmer Account." An early inventory of the estate in 2011 indicated that the balance of these two accounts was $2,475,000. The balance of these two estate accounts continued to accrue interest, earn dividends, and appreciate over the life of the probate proceedings, increasing the value of the estate by an additional $400,000 to $500,000.[2]

The dispute in this case relates to the distribution of the probate estate (the investment account balances and the appreciation of those accounts) between Fulmer as the surviving spouse and the Pattons as the residual trust beneficiaries. Generally, the will

---

[1] Bank of America, as successor in interest to Worthen Bank, was originally nominated to serve as coexecutor and cotrustee with Fulmer. However, the bank declined to serve. Fulmer was appointed to serve as sole executrix and sole trustee.

[2] The briefs of the parties do not delineate the actual amount of appreciation of the probate assets. However, we acknowledge that appellant's attorney stated in oral argument that the appreciation was approximately $400,000 to $500,000.

provided for a bequest to the spouse using a common estate tax marital deduction formula with the balance of the estate bequeathed to a residual trust for the use and benefit of the spouse during her lifetime. What brings this probate estate out of the ordinary is that when the decedent passed away in 2010, there was arguably a gap in the federal estate tax law caused by the sunset provisions of The Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA"). The EGTRRA contained a sunset provision stating that "this chapter shall not apply to estates of decedents dying after December 31, 2009." However, Congress passed the 2010 Tax Relief Act, which purported to retroactively reinstate the estate tax for decedents dying in 2010.[3] Therefore, because the decedent passed away in 2010, there was a significant issue before the trial court as to whether the determination of the amount of the spouse's bequest, which was dependent on a reduction based on a marital deduction calculation, was affected by the sunset provision of the EGTRRA. The trial court ultimately found that because the federal estate tax was not in effect on the date of the decedent's death and there was no estate tax due on the estate, the estate was not required to reduce the amount of the spouse's bequest by the "marital deduction" calculation. The trial court awarded Fulmer 50% of the probate estate (in addition to the $1,547,500 that Fulmer received in nonprobate assets, the result of which awarded Fulmer approximately 85% of the adjusted gross estate). The trial court also awarded Fulmer 50% of the appreciation of the probate estate.

---

[3] While the trial court's decision does incorporate the impact of the EGTRRA on this estate, we find it unnecessary to address the specifics or minutia of the interrelationship of the EGTRRA and the 2010 Tax Relief Act to resolve the issues on appeal.



## II. *Proceedings in the Trial Court*

The Pattons filed a petition to construe the decedent's will, arguing that it was the decedent's testamentary intent to leave Fulmer only property and assets that qualify for the estate tax marital deduction.[4] Appellants contended that this bequest should be valued at $464,045 with the balance of the probate estate being transferred to the residual trust. Appellants also argued that Fulmer was making distributions to herself without reporting them and that those distributions did not qualify for the marital deduction. They therefore requested, in addition to construction of the will, an accounting and repayment by Fulmer of the nonqualifying distributions.

Fulmer responded to the petition to construe the will. She acknowledged that the distributions to herself should have been approved by the court. She also asserted that the language in the decedent's will was clear and unambiguous and that the amount of the bequest should be paid to her.

Following a hearing in November 2012, the court entered an order in December 2012 finding, among other matters, that appellants had not shown any ambiguity in the will "which would allow or require the court to hear extrinsic evidence of [the] testator's intent." The order further provided that "[t]he Court concludes that there is no ambiguity in the language of the will[.]" The effect of this ruling would be to later exclude the attorney who drafted the will and an expert witness from testifying in the final hearing of this matter as to the testator's intent and the impact of probate and estate tax

---

[4] The amount available for the marital tax deduction increased many times between the execution of the decedent's last will and testament in 1980 and the date of his death in 2010.

laws. The court reserved the issue of whether the court should order a credit or refund of the distributions.

Fulmer filed what was labeled as a final accounting on January 9, 2013. On April 16, 2013, Fulmer petitioned for division of the estate assets. She contended there were no marital deductions provided by federal law at the time of the decedent's death, that his estate totaled $4,022,910, and that she was entitled to half, or $2,011,455, as her share. She then asked that this amount be distributed to her.

Appellants filed a motion to intervene and responded to Fulmer's petition to distribute assets. Appellants argued that, according to the decedent's will, Fulmer's marital share should only be $464,045 because Fulmer's calculation did not account for the $1,547,410 in insurance proceeds, jointly-held property, and annuities she took outside probate that were allowed as marital deductions and that she listed on her initial tax filings.

On February 6, 2014, appellants filed a motion seeking to have the court determine whether attorney William Haught could testify. Haught had drafted the decedent's will. The motion noted the court's earlier ruling in connection with the construction of the will that extrinsic evidence was not necessary. Fulmer responded, arguing that Haught's testimony was unnecessary because it would not aid in the court's construction of the will or in the court's determination of the value of the bequest to Fulmer. The court subsequently denied this motion.

On March 2, 2014, appellants requested that an accounting be filed. The motion noted that estate accountings were required at least annually. Fulmer denied the allegations. She noted that the final accounting had been filed some fifteen months earlier, in January

2013. She also asserted that the delay in closing the estate was due to appellants' filing dilatory and unnecessary pleadings.

Various hearings in this matter were held on the multitude of filings by the parties. The circuit court addressed Fulmer's motion for division of assets in an order entered on May 16, 2014. The parties agreed, and the court found, that the amount of the adjusted gross estate was $4,022,910. The court found specifically that "there was no federal estate tax law in effect at the time of the Decedent's death on February 25, 2010. Therefore, there were no marital deductions existing in the federal tax law on the death of the Decedent, nor were any necessary to be taken in order to reduce the amount of estate tax due on the estate of the Decedent." Accordingly, the court found that Fulmer was entitled to fifty percent of $4,022,910.[5] The court also found that Fulmer was entitled to one-half of the increase in value of the assets of the probate estate (the two accounts), less the $113,500 previously paid to her as distributions. The court denied appellants' other petitions and ordered that, once the funds were distributed to Fulmer, the remaining funds be distributed to the residuary trust. This appeal followed.

On appeal, appellants contend that the circuit court erred in (1) its construction of the will; (2) finding that there was no estate tax law in effect in 2010; (3) awarding Fulmer 50% of the increase in value of the probate assets; (4) ordering a final distribution without an accounting; and (5) excluding the testimony of attorneys William Haught and Coleman Westbrook.

---

[5] The court further found that Fulmer was entitled to reimbursement of $199,685 in taxes paid with her personal funds, which is not an issue on appeal.



III.   *The Standard of Review*

We review probate matters de novo but will not reverse the probate court's findings of fact unless they are clearly erroneous. *In re Estate of Kemp*, 2014 Ark. App. 160, 433 S.W.3d 911. A finding is clearly erroneous when, although there is evidence to support it, the  appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Id*. We must also defer to the superior position of the lower court sitting in a  probate matter to weigh the credibility of the witnesses. *Id*.

IV.   *Construction of Will and Effect of Tax Law*

Appellants' first two points relate to the circuit court's construction of the will and we will address them together. The cardinal rule for the interpretation of wills and other testamentary documents is that the intent of the testator should be ascertained from the instrument itself and effect given to that intent. *Nunnenman v. Estate of Grubbs*, 2010 Ark. App. 75, 374 S.W.3d 75. The purpose of construing a will is to arrive at the testator's intention; however, that intention is not that which existed in his mind, but rather that which is expressed by the language of the instrument. *Id*.

The decedent's will provided for a bequest to Fulmer according to a formula set out  in Section VII:

> *If my wife survives me, I give, devise and bequeath to her cash, securities or other property of my estate (undiminished by any estate, inheritance, succession, death or similar taxes) having a value equal to fifty percent **(50%) of the value of my adjusted gross estate** as finally determined for federal estate tax purposes, **less the aggregate amount of marital deductions, if any, allowed** for such tax purposes by reason of property or interests in property  passing or which have passed to my spouse otherwise than pursuant to the provisions of this  Article.*
>
> My executor shall have the sole discretion to select the assets which shall constitute this bequest. In no event, however, shall there be included in this bequest

any asset or the proceeds of any asset which will not qualify for the federal estate tax marital deduction, and this bequest shall be reduced to the extent that it cannot be satisfied with such qualifying assets. My executor shall value any asset selected for distribution in kind as part of this bequest at the value of such asset at the date of distribution of such asset.

The term "maximum marital deduction" shall not be construed as a direction by me to exercise any election respecting the deduction of estate administration expenses, the determination of the estate tax valuation date, or any other tax election which may be available under any tax law, only in such manner as will result in a larger allowable estate tax marital deduction than were the contrary election made.

(Emphasis added.)

Section VIII of the will created a "Residuary Trust" into which the decedent bequeathed "all the rest, residue and remainder of my property of every kind and description."

According to Section I of the will, certain terms, particularly any tax-related words, were mandated to have the same meaning as such words have for purposes of applying the Internal Revenue Code, as amended, to the date of the decedent's death. Those terms specifically included, but were not limited to, "gross estate," "adjusted gross estate," "taxable estate," "unified credit," "state death tax credit," "maximum marital deduction," "marital deduction," and "pass."

There was no dispute, and the parties agreed, that the decedent's "adjusted gross estate" was valued at $4.022 million and that this figure included those assets that passed to Fulmer outside probate. The circuit court ruled that Fulmer's share of the decedent's estate was $2.011 million, which was 50% of the adjusted gross estate. According to appellants, the result of the court's ruling is that Fulmer receives the $2.011 million awarded as 50% of the decedent's probate estate *plus* the $1.547 million she took outside probate, for a total of $3.558 million. This would represent approximately 85% of the assets that the decedent

owned at the time of his death and would leave the residuary trust with receiving only $464,000. Fulmer argues that the circuit court did not err in its construction of the will. We conclude that the circuit court erred in its construction of the will.

First, the decedent's will makes it clear that the terms "gross estate," "adjusted gross estate," and "marital deduction" are required to be defined with reference to the Internal Revenue Code. The "gross estate" is more expansive than the probate estate and includes assets that pass outside probate such as annuities, life insurance, and jointly-held property. *See* 26 U.S.C.S. §§ 2033, 2039, 2040, 2042 (LexisNexis 2016). "Adjusted gross estate" is defined as "the value of the gross estate reduced by the sum of the amounts allowable as a deduction under section 2053 or 2054." *See* 26 U.S.C.S. § 6166(b)(6) (LexisNexis 2016); *see also Empire Trust Co. v. United States*, 226 F. Supp. 623 (S.D. N.Y. 1963). Those sections provide for deductions for funeral expenses, administration expenses, claims against the estate, for unpaid mortgages on property where the value of the decedent's interest therein is included in the value of the gross estate, and for certain casualty losses that are not compensated for by insurance. The "taxable estate" is "determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." *See* 26 U.S.C.S. § 2056(a) (LexisNexis 2016). Regardless of the inter-relationship of the EGTRRA of 2001 and the Tax Relief Act of 2010, and regardless of whether there existed an estate tax for decedents passing away in 2009, the definitions

set forth and referenced in the decedent's will remained in effect.[6]

The operative language in the decedent's will provides that the spouse shall receive fifty percent (50%) of the value of the *adjusted gross estate* as finally determined for federal estate tax purposes, less the aggregate amount of *marital deductions,* if any, *allowed* for such tax purposes by reason of property or interests in property passing or which have passed to his spouse otherwise than pursuant to the provisions of the will. The trial court found that due to the absence of an estate tax on this estate, a marital deduction was not "necessary." The trial court misinterpreted the language of the will. The plain and unambiguous terms of the will stated that the spouse's bequest was to be reduced by the aggregate amount of marital deductions allowed, not necessary or utilized.

Here, the parties stipulated, and the trial court found, that the adjusted gross estate was $4,022,910. The adjusted gross estate is the sum of property that passed to the spouse outside of probate ($1,547,410) plus the value of the probate estate ($2,475,500). By application of the foregoing definitions and the language found in the will, it is clear that it was the testamentary intent of the decedent for Fulmer to receive as a bequest fifty percent of his adjusted gross estate *less* the items passing to Fulmer outside of probate. By simple arithmetic, 50% of the adjusted gross estate is $2,011,455. The value of the property that passed to Fulmer otherwise than pursuant to this article is $1,547,410. Therefore, the bequest to Fulmer under Section VII of the will is $464,455.

The fact that there was arguably no federal estate tax in effect at the time of the decedent's death does not change the construction of the will or the testamentary intent

---

[6] *See* footnote 3.

of the testator. By focusing on the fact that there was no estate tax, the circuit court went outside the four corners of the will and failed to give meaning to all of the words used in the will. The paramount rule in construing wills is to determine the intent of the testator from the four corners of the will, considering the whole will and in the light of the situation and circumstances surrounding the testator at the time the will is executed. *Bailey v. Delta Trust & Bank*, 359 Ark. 424, 198 S.W.3d 506 (2004); *Hanna v. Hanna*, 273 Ark. 399, 619 S.W.2d 655 (1981). That intention does not change depending on the year in which the decedent died.

To adopt the circuit court's construction of the will is to leave a substantially lower amount for the decedent's own blood relatives contrary to his stated testamentary intent to leave them one-half of the adjusted gross estate in a residuary trust. *See Angel v. Angel*, 280 Ark. 21, 655 S.W.2d 373 (1983). When the proper construction is placed on the decedent's will as stated in Section VII, the end result is that the surviving spouse will receive $2.011 million ($1.547 million received as nonprobate assets plus $464,455 in probate assets), and the residual trust will receive $2.011 million, which is consistent with the testator's intent.[7][8]

### V. *Division of Appreciation of Probate Assets*

By erring in the construction of the will and the amount due Fulmer thereunder,

---

[7] On remand, both parties will receive additional monies from the distribution of the appreciation of the probate estate's assets as delineated in this opinion.

[8] The spouse, Fulmer, still retains the right to enjoy the benefits of the residual trust during her lifetime according to the terms of the will.

the circuit court also necessarily erred in awarding Fulmer half of the increase in the value of the two investment accounts in the decedent's estate.[9] When the circuit court awarded Fulmer half of the appreciation of the investment accounts, this appears to have been based on the notion that Fulmer was entitled to half of the adjusted gross estate without deducting the amount of assets transferred to Fulmer outside probate, which we have determined was in error. We therefore hold that Fulmer is entitled to the appreciation of her $464,455 interest in the probate estate with the remainder of the appreciation transferred to the residual trust; as such, we are remanding the issue of the calculation and distribution of the appreciation of the investment accounts in a manner consistent with this opinion. *See, e.g., Standridge v. Standridge*, 298 Ark. 494, 769 S.W.2d 12 (1989) (reversing and remanding for further consistent proceedings where other issues were affected by the reversal of the probate order regarding who should be appointed as the personal representative and administrator); *Fox v. Fox*, 2015 Ark. App. 367, 465 S.W.3d 18 (reversal on child support necessarily affected alimony award such that alimony was also to be reconsidered on remand); *Payne v. Donaldson*, 2010 Ark. App. 255, 379 S.W.3d 22 (reversal of monetary award necessarily affected award of attorney fees, which should be reconsidered by the trial court on remand).

VI. <em>Failing to Require a Final Accounting</em>

Although we are reversing the circuit court's construction of the will and

---

[9] The parties in their respective briefs argue whether the bequest to Fulmer was a general or specific bequest and the applicability of Arkansas Code Annotated section 28-53-112. However, neither party raised these arguments to the trial court below. Therefore, these arguments are not preserved for appellate review.

remanding for further proceedings, there are still other issues to address. The first is appellants' complaint that the circuit court made a final distribution without requiring Fulmer to file a final accounting prior to the division of the estate's assets. Fulmer and the estate contend that the division of assets was only a partial distribution, not a final distribution. The order appealed from provides in pertinent part as follows:

> The Court further orders that the Executrix retain a sufficient amount of funds needed to pay any further income taxes or other taxes which may be assessed against the Estate. The Court directs the Executrix to reflect the exact amount of all such payments *in the final accounting to be filed herein.*

(Emphasis added.)

The circuit court indicated that it thought the motion to require the accounting was premature. Its order on this request recited that a final accounting was to be filed in the future. Even appellants state in the appellate briefs that the order on appeal was "essentially" and "in effect" an order of final distribution, not that it was in fact an order of final distribution. Based on our holdings herein, it is clear that a final accounting will be required prior to the distribution of assets and closing of the estate.

## VII. *Evidentiary Rulings*

Finally, appellants challenge the circuit court's refusal to allow two attorneys, William Haught and Coleman Westbrook, to testify. Our standard of review provides that we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion nor will we reverse absent a showing of prejudice. *Bedell v. Williams*, 2012 Ark. 75, 386 S.W.3d 493.

Early in the litigation, the circuit court ruled that it would not consider extrinsic evidence concerning the decedent's testamentary intent because the court found the will to be unambiguous. Later, appellants sought to have Haught and Westbrook testify as to the proper construction of the will. The circuit court ruled that Haught could not testify because he was still one of the attorneys of record for the estate and Fulmer. We affirm for a different reason than the one expressed by the circuit court. *Patterson v. Odell*, 322 Ark. 394, 909 S.W.2d 648 (1995); *Summers Chevrolet, Inc. v. Yell Cty.*, 310 Ark. 1, 832 S.W.2d 486 (1992).

Extrinsic evidence may be received on the issue of the testator's intent only if the terms of the will are ambiguous. *Taylor v. Woods*, 102 Ark. App. 92, 282 S.W.3d 285 (2008). The determination of whether there is an ambiguity is a matter of law. *Thinn v. Parks*, 79 Ark. App. 20, 83 S.W.3d 430 (2002). Absent a finding of ambiguity by the court, testimony about the testator's intent should not be considered. *Id*. When the terms of a will or trust are unambiguous, it is the court's duty to construe the written instrument according to the plain meaning of the language employed. *Bailey v. Delta Trust & Bank*, *supra*. In an earlier hearing, the circuit court found that the will was unambiguous, and we agree with that assessment. Hence, the court did not abuse its discretion in excluding the extrinsic testimony of Haught.

This brings us to the court's exclusion of Westbrook's testimony. Appellants proffered Westbrook as an expert in tax law. The circuit court ruled that Westbrook's testimony should have been proffered at an earlier hearing, stating also that the circuit court could look up tax law on its own. Again, the court did not abuse its discretion in

SLIP OPINION

excluding Westbrook's testimony. Expert testimony is not automatically admissible. Expert testimony must still meet the criterion of helpfulness expressed in Arkansas Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Where the issue is within the ability of the fact-finder to understand or draw its own conclusions, there is no abuse of discretion in excluding such expert testimony. *See Rosenow v. Alltel Corp.*, 2010 Ark. 26, 358 S.W.3d 879; *Williams v. Ingram*, 320 Ark. 615, 899 S.W.2d 454 (1995). On appeal, an appellant must shoulder the burdensome task of demonstrating that the trial court abused its discretion. *Williams*, *supra*. Appellants have failed to carry that burden.

## VIII. *Conclusion*

We reverse the circuit court's construction of the will, its determination of the bequest to Fulmer, and its award of half of the appreciation of the assets comprising the probate estate; we remand the case for further proceedings consistent with this opinion. We affirm the court's evidentiary rulings excluding the testimony of Haught and Westbrook.

Affirmed in part; reversed and remanded in part.

GLADWIN, C.J., and VAUGHT, J., agree.

*Rose Law Firm, a Professional Association*, by: *Craig S. Lair* and *Amanda K. Wofford*, for appellants.

*Singleton Law Firm, P.A.*, by: *Charles R. Singleton* and *Damon C. Singleton*, for appellee.