LARRY D. VAUGHT, Judge
In this probate matter, Travis Spurling appeals the orders entered by the Montgomery County Circuit Court on June 24, 2016, and April 25, 2017. Travis argues that the circuit court erred by (1) entering an order appointing an administrator on the same date the petition for appointment was filed without providing notice and a hearing to all interested parties; (2) closing the administration of the estate without requiring proof of publication; (3) allowing the executor to serve without bond; (4) closing the administration of the estate without the filing of an accounting; (5) closing the administration of the estate without distributing the assets of the decedent; and (6) closing the administration of the estate without following the wishes of the decedent's last will and testament. We affirm.
Allie Marie Reed died on August 20, 2007. Following her death, on December *121 12, 2008, a petition for admission of will to probate and for appointment of executor was filed by four of Allie's children: Bernice Johnston, Sherleen Reed, Alidene Ragan, and Bill Reed. The petition alleged that Allie's surviving heirs included the petitioners and Velma Qualls, Allie's daughter, and Travis, Velma's son and Allie's grandson. The petition alleged that Allie had left a holographic will dated April 3, 2007,[1] but that the will did not nominate an executor. The petitioners nominated Bill as the executor.[2] The petition also listed the personal property of Allie's estate and stated that the property was located at Allie's home, which was being occupied by Travis.[3] The petition further alleged that Travis had refused to allow the petitioners to take possession of the personal property of the estate. The petition requested that the court enter an order authorizing Bill to take possession of the personal property and directing the sheriff to assist Bill in obtaining possession of the property.
On the same day-December 12, 2008-the circuit court entered (1) an order admitting the will to probate and appointing an executor, and (2) an order listing the property of Allie's estate; finding that the property was located at Allie's home, which was occupied by Travis; and authorizing Bill and the sheriff to take possession of the property. The record reflects that on the following day, December 13, 2008, Bill, the sheriff, and others appeared at Allie's home where Travis was living to obtain possession of Allie's personal property.
On January 15, 2009, Travis filed an affidavit to claim against Allie's estate. In the affidavit, he stated that Bill took certain property from Allie's home that belonged to Travis.[4] On the same day, Travis also filed a demand for notice of proceedings and for an inventory of the estate. He alleged, among other things, that Bill, eleven relatives, and two sheriff's deputies came to his house on December 13, 2008; spent six hours there; and removed and destroyed numerous items of his (Travis's) personal property that were not on the list attached to the petition to probate Allie's will that was provided to the court. In the demand, Travis further alleged that Allie's will did not waive bond, that Bill failed to notify the devisees of Allie's estate of his appointment, and that Bill failed to publish notice to creditors or take any action in his administrative capacity except to remove Travis's personal property from his home. Travis requested that the circuit court refuse to enter further orders without notice to him and without his opportunity to be heard, to require Bill to post bond as required by Arkansas law, to require Bill to publish notice to creditors, and to require Bill to file an inventory of the estate's assets.
On October 22, 2009, Travis filed a petition for relief. Therein, he alleged that Bill had not filed an inventory of the estate, a publication and notice to creditors, an inventory *122 of estate assets, or an accounting of the estate. In August 2010, the circuit court entered an order directing Bill to file an estate inventory no later than August 19, 2010.
On October 1, 2010, Travis filed another petition for relief, alleging that Bill failed to timely file an inventory as ordered by the circuit court in August 2010. Travis alleged that Bill's conduct was contemptuous and that he should be appropriately punished. On October 8, 2010, Travis filed a petition for contempt, alleging that Bill failed to timely file an inventory as ordered by the circuit court in August 2010.
According to an October 26, 2011 letter from Travis's counsel to the circuit court, the contempt issue was set for a hearing, but counsel met in chambers beforehand wherein Bill's counsel (1) agreed that he and Bill were in error and Bill agreed to pay Travis an attorney's fee of $500 and (2) discussed the return of Travis's personal property as soon as possible. Travis's counsel's letter stated that the $500 had been paid, but nothing else had occurred. Travis's counsel requested a hearing on Travis's demand that Bill file an inventory and on the issue of the return of Travis's property.
On January 20, 2012, a hearing was held on Travis's petitions for relief and for contempt. At the onset of the hearing, counsel for Bill advised the court that Bill had filed an inventory that day. Travis's counsel responded, stating that he had filed a petition for relief asking for notice, publication to the creditors, an inventory, and an accounting. Travis's counsel stated that when those things did not occur, he filed the petition for contempt; however, the parties had resolved the contempt issue. Travis's counsel then requested that a new executor be appointed, to which counsel for Bill agreed. The circuit court granted the oral request; relieved Bill of his duties as executor of Allie's estate; appointed a third party, Chris Ray, as the executor of Allie's estate; and made a $10,000 signature bond for Ray.
Also on January 20, 2012, Bill filed a petition alleging that Travis had possession of estate property and seeking to have him return it to the estate. On January 30, 2012, Travis filed an objection to the inventory, claiming that there were items listed in it that belonged to him and that there were items listed that Bill previously alleged that Travis possessed.
On May 3, 2016, the circuit court held another hearing and heard testimony from Bill, Travis, and Marsha Summit (Allie's granddaughter) and arguments regarding the items of personal property at issue. On June 24, 2016, the circuit court entered an order finding that Allie passed away on August 20, 2007; Bill was appointed executor of Allie's estate; on December 13, 2008, Bill and others appeared at Travis's home to retrieve items belonging to the estate; the estate had sufficient time to remove all items belonging to the estate on December 13, 2008; and the estate was entitled to only those items listed in the inventory filed January 20, 2012. The circuit court then made specific findings as to certain items of personal property, awarding some items to the estate and others to Travis. The court reserved making a ruling on the disposition of a rifle.
On April 25, 2017, the circuit court entered another order, summarizing the findings in its June 24, 2016 order. The court found that all items of Allie's personal property remaining in Allie's home after December 13, 2010, were awarded to Travis. All items of Allie's personal property in Bill's possession were awarded to the estate. Finally, the court found that there was no other property of any value remaining *123 in the estate to dispose of and closed the estate. This appeal followed.
On appeal, Travis's first four arguments are that the circuit court erred by (1) entering an order appointing an administrator on the same date the petition for appointment was filed without providing notice and a hearing to all interested parties; (2) closing the administration of the estate without requiring proof of publication; (3) allowing the executor to serve without bond; and (4) closing the administration of the estate without the filing of an accounting.
Travis raised these four arguments in his pleadings below. However, our review of the record reveals that the circuit court never ruled on these issues. Accordingly, there are no rulings on these issues in the record before us. It is well settled that to preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling below. Doe v. Baum , 348 Ark. 259, 277, 72 S.W.3d 476, 486 (2002). Because Travis failed to obtain rulings from the circuit court on his first four points on appeal, these issues are not preserved for appeal, and we must affirm.
Travis's fifth point on appeal is that the circuit court erred in closing the administration of the estate without distributing the assets of the decedent as required by Arkansas Code Annotated sections 28-53-103 et seq. (Repl. 2012). Travis's entire argument under this point is as follows:
The Arkansas Probate Code requires compliance with statutory requirements regarding the distribution of the decedent's assets. Ark. Code Ann. § 28-53-103 et seq. The court entered an order on April 25, 2017 closing the estate without distributing any of the existing property in the estate. This was clearly erroneous. As a result of the failure of the distribution of assets, Travis Spurling suffered irreparable harm by not receiving his one-sixth share of the decedent's estate as directed in her will.
We review probate matters de novo but will not reverse the probate court's findings of fact unless they are clearly erroneous. Patton v. Fulmer , 2016 Ark. App. 260, at 7, 492 S.W.3d 512, 516. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. Id. , 492 S.W.3d at 516. We must also defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses. Id. , 492 S.W.3d at 516.
Here, the circuit court heard evidence from Travis, Bill, and Allie's granddaughter regarding the items of personal property in dispute and the value of those items. The court then weighed the evidence in order to distribute the property. We must defer to the superior position of the circuit court in the manner it weighed the evidence in this regard. Furthermore, the record reveals that the circuit court distributed all the personal property in dispute-estate and nonestate property-that was identified by the parties. In its final order, the court found that all of Allie's personal property that remained in her home was the sole property of Travis. The court found that all of Allie's property that was in Bill's barn was the property of the estate. Finally, the court found that there was no other property of any value remaining in the estate to distribute; therefore, the court closed the estate. Travis does not explain or identify what assets were not distributed. He does not present the value of any of the personal property in dispute. He also fails to explain how he was harmed. Accordingly, we hold that the circuit court's order distributing the estate *124 assets was not clearly erroneous and affirm this point.
Travis's sixth and final point on appeal is that the circuit court erred by closing the administration of the estate without following the wishes of the decedent's last will and testament. Travis's entire argument under this point is as follows:
On December 12, 2008, the court admitted Allie Reed's holographic will to probate. That will declared that she wished that her estate be divided six ways
between her five children and Travis Spurling, a grandson. On April 25, 2017, the court entered an order closing the estate without regard to the distribution of the decedent's assets in accordance with the terms of her will. No distribution was made, despite clear evidence that the Executor held all of the estate's property in a barn. This was clearly erroneous. As a result, Travis Spurling suffered irreparable harm by not receiving one-sixth of the decedent's estate in accordance with her wishes.
Again, as set forth above, the circuit court heard testimony from Travis, Bill, and Allie's granddaughter regarding the items of personal property in dispute and the value of those items. The court weighed that evidence in order to distribute the property. The court awarded some of Allie's property to the estate and some to Travis. We must defer to the superior position of the circuit court on this issue. Moreover, Travis, in his argument, does not point to any evidence to support his argument that the circuit court's distribution was not in accordance with Allie's will. He cites no evidence to demonstrate that the value of his distribution was less than one-sixth of the estate. In fact, he cites no evidence pointing to the value of any of the items of personal property in dispute. Accordingly, we hold that the circuit court's order distributing the estate assets and closing the estate was not clearly erroneous and affirm on this point.
Affirmed.
Virden and Gladwin, JJ., agree.

Allie's will read:
I have five children. Bernice, Sherleen, Alidene, Bill, Velma Jean. I have a grandson Travis Spurling. I want Travis to share just like my children when I leave this world. I want my estate divided into six parts. For Bernice, Sherleen, Alidene, Bill, Velma Jean and Travis.

On December 12, 2008, Bill filed an acceptance of appointment of executor.

The inventory reveals that Allie owned no real property.

This claim is the subject of a separate civil appeal brought by Travis against Bill, individually and as executor of Allie's estate, and Sherleen, which we also hand down today. Spurling v. Reed , 2018 Ark. App. 175, 2018 WL 1177926.